2015 IL App (1st) 123753
No. 1-12-3753

THIRD DIVISION
March 31, 2015

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ELLIOT S. WICZER and WICZER AND ZELMAR, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY WOJCIAK, DETAILS, LLC, GEORGE PAPPAS, STEVEN KOLBER, STEVEN WINOKUR, TIMOTHY OPFER, JAMES STUCKMANN, and MICHAEL KRABBE, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | No. 09 CH 41384 |
| Defendants | ) | |
| | ) | |
| (Steven Kolber, Steven Winokur, Timothy Opfer, James Stuckmann, and Details, LLC, | ) | The Honorable LeRoy K. Martin, Jr., Judge Presiding. |
| Cross-Plaintiffs-Appellees; | ) | |
| | ) | |
| Larry Wojciak, | ) | |
| | ) | |
| Cross-Defendant-Appellant). | ) | |

_____

PRESIDING JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Lavin and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1     At issue in this case is the disposition of earnest money held by plaintiff Elliot Wiczer

pursuant to the sale of assets and real estate by cross-plaintiff-appellee, Details, LLC (Details),

which is an Illinois limited liability company. Details is a car wash business and also owns the real estate at the site of the car wash. Plaintiff Elliot Wiczer was at all relevant times an attorney licensed in Illinois and held the funds. Plaintiff Wiczer & Zelmar, LLC, is a law firm in which Wiczer is a partner. Defendant and cross-defendant-appellant Larry Wojciak sought to purchase Details. Plaintiff Wiczer was the attorney for Wojciak and "Details Acquisition, LLC," which was an entity to be formed by Wojciak and listed as the purchaser. Attorney Bernard Wiczer was also Wojciak's and Details Acquisition's attorney. Cross-plaintiff-appellees Steven Kolber, Steven Winokur, Timothy Opfer, and James Stuckmann were all members of Details and individual depositors of the funds held by Wiczer.

¶ 2        An escrow agreement was executed by the individual Details member defendants but not by Details, LLC, and was not executed by Wojciak individually or on behalf of any entity owned or managed by him. This escrow agreement provided that Details, LLC, would provide the earnest money, even though it was the seller, because the business was in distress and owed more money than Wojciak was willing to pay for the property and the business. The individual Details member defendants deposited the earnest money with Wiczer as temporary escrow agent. The asset purchase agreement for the real estate and car wash business was executed later and was executed by Details, LLC, as seller, and by Wojciak on behalf of "Details Acquisition, LLC," an entity not in existence at that time and later formed under another name, as the buyer. The asset purchase agreement provided that the buyer would deposit all of the earnest money in accordance with an escrow agreement to be attached to the contract, but no escrow agreement was ever attached to the contract. Wojciak canceled the contract and the transaction never closed. Wojciak did not deposit any of the earnest money held by Wiczer. The circuit court ordered that

Wiczer return the earnest money to the individual Details defendants who had deposited the earnest money. Wojciak claims entitlement to the funds under the escrow agreement.

¶ 3      We hold that the asset purchase agreement was properly executed by the buyer and seller and it incorporated by reference an escrow agreement, but (1) the escrow agreement was never fully executed by the correct parties to the transaction; (2) the terms of the escrow agreement conflicted with the escrow provision in the asset purchase agreement; and (3) the conditions of the escrow were never satisfied. Thus, there was no effective earnest money escrow agreement, yet the individual Details member defendants deposited earnest money in escrow and there was no breach of the sales contract, as the buyer decided to cancel the contract. Under these circumstances, the correct result is that the escrow funds must be returned to the depositors as the circuit court ordered.

¶ 4                                      BACKGROUND

¶ 5      In the spring of 2009, Wojciak learned of the Details car wash owners' intention to sell the car wash business and the real estate on which the business operated. Wojciak contacted Details' managing partner, Michael Krabbe, and met with Krabbe at the car wash and discussed the status of the car wash and its multiple financial problems, the finances of the company and the possibility of Wojciak purchasing the car wash. In late June or early July of 2009, Wojciak met with Krabbe and the Details defendant members because of his knowledge of the car wash's financial problems. According to Winokur's testimony, Details was about a month or two behind on its debt financed through Barrington Bank and Trust. Details was indebted to Barrington Bank And Trust for $2.15 million for financing the car wash. Wojciak and the Details defendants agreed upon the purchase price of $2.15 million, which would cover the debt. Wojciak only offered to pay $1,750,000, however, and so the Details defendants agreed to pay $400,000 in

earnest money to cover the difference, to limit their exposure on the Barrington Bank And Trust note. Although this circumstance was unusual in that the sellers, as opposed to the buyer, were making an earnest money deposit, Wojciak wanted to ensure that the sale closed. On July 2, 2009, Wojciak and Details entered into a letter of intent contemplating the possibility that the parties would enter into written agreements. The letter of intent also provided for an escrow deposit and an escrow closing with Ticor Title Insurance Company.

¶ 6 The earnest money escrow agreement (escrow agreement) was prepared before the asset purchase agreement. The escrow agreement is attached to and incorporated in the cross-plaintiff-appellees' cross-complaint and in the Wojciak first amended counter-cross-complaint. The seller in the escrow agreement was specified as "Details, LLC," and the buyer was specified as "Details Acquisition, LLC," and Illinois limited liability company "in formation," to be formed by Wojciak. The escrow holder was listed as Ticor Title Insurance Company. Other parties to the escrow agreement were the parties' respective attorneys. Details Acquisition LLC was never formed by Wojciak. The temporary escrow holder was Elliot Wiczer. Attorney Barry Rosenbloom represented Details and its members Kolber, Winokur, Opfer, and Stuckmann, and reviewed the escrow agreement, reviewed the escrow agreement with the Details member defendants, and advised them to sign the escrow agreement.

¶ 7 Only the Details individual members Kolber, Winokur, Opfer, and Stuckmann signed the escrow agreement, in their individual capacities. Details did not execute the escrow agreement. No Details member signed on behalf of Details. Upon receipt of executed signature pages to the escrow agreement, Rosenbloom forwarded them to Wiczer. Wojciak himself, however, did not execute the escrow agreement. "Details Acquisition, LLC," also did not execute the escrow agreement. Ticor Title Insurance Company did not execute the escrow agreement.

¶ 8　　　　The escrow agreement required deposit of earnest money in escrow by the *seller* and return of the earnest money to the *buyer*, instead of the seller, if the transaction did not close. Section III of the escrow agreement provided the following regarding earnest money:

> "Seller deposits herewith as an initial Earnest Money deposit the sum of $300,000.00 cash. Seller will deposit the additional sum of $100,000.00 as Earnest Money hereunder. Purchaser will deposit the balance of the purchase price, $1,750,000.00, plus or minus prorations from Purchaser's Credit Facility pursuant to the terms hereof and the Agreement."

¶ 9　　　　Section V(C) sets forth the following:

> "C. Upon receipt of *notice from Purchasers' Counsel* that Purchaser has received the Environmental Phase I Audit and such other documents as may be required by the Agreement *and is ready to close*, Escrowee shall at once record the following documents in the order as follows:
>
> 1. First record the Seller's Deed;
>
> 2. Second record the First Mortgage and such other of Purchaser's Credit Facility Documents as require recording; and
>
> 3. Third record releases of existing indebtedness on Seller's assets being sold."  (Emphases added.)

¶ 10　　　　Section V(H) of the escrow agreement provided the following:

> "H. *If Purchaser's counsel fails to give the notice required pursuant to Paragraph C of this Section V by September 30, 2009*, this Escrow shall terminate and the respective recorded and unrecorded documents deposited shall be returned to the respective depositor and Purchaser and Seller shall proceed in accordance with Paragraph XIV of

the Agreement. *The Earnest Money deposit less escrow fees charged shall be paid to Purchaser*." (Emphases added.)

¶ 11    According to plaintiff Wiczer, the reason for the provision that Wojciak would keep the earnest money if the transaction did not close was because Wojciak indicated he was concerned from the start that the car wash purchase was "problematic" and he wanted protection to at least cover his expenses. Also according to Wiczer, Wojciak would not proceed to the asset purchase agreement until the defendant Details members had signed the escrow agreement and Wiczer had received the required deposits.

¶ 12    Rosenbloom, attorney for the member defendants, Kolber, Winokur, Opfer and Stuckmann, indicated that the deal was structured in this manner, where the Details member defendant sellers would pay $400,000 in earnest money, because they owed their bank $400,000 more than Wojciak was willing to pay for the business and they wanted to mitigate their losses and sell the business and the real estate.

¶ 13    The Details defendants each paid a portion of the $400,000 based on their respective ownership percentages. The parties indicate that the following was the breakdown of the amounts initially paid for the earnest money: Kolber contributed $100,000; Winokur contributed $100,000; Opfer contributed $62,500; Stuckmann contributed $62,500. According to the copy of the escrow agreement executed by the Details defendants, George Pappas, another member of Details, LLC, also contributed $75,000, as indicated on his signature page, thus totaling $400,000.

¶ 14    The asset purchase agreement, on the other hand, required deposit of the earnest money in escrow by the *buyer* and return to the buyer if the transaction did not close. On September 3, 2009, Details entered into the written asset purchase agreement. A copy of the asset purchase

agreement is attached to and incorporated in both the cross-complaint for declaratory judgment and the first amended counter-cross-complaint filed by Wojciak. The seller is specified as Details, LLC, and the purchaser is specified as "Details Acquisition, LLC" an Illinois limited liability company "to be formed."

¶ 15        Wojciak signed the asset purchase agreement on behalf of "Details Acquisition, LLC," as its manager. Michael Krabbe signed the asset purchase agreement on behalf of Details, LLC, as its manager. At this time, "Details Acquisition, LLC" had still not been formed. Wojciak eventually formed an LLC by a different name.

¶ 16        The fourth paragraph in the recitals of the asset purchase agreement provided as follows:

>        "Buyer and Seller wish to enter into this Agreement to more fully provide for and to consummate the transactions contemplated by the Letter of Intent, the terms and conditions of which shall be replaced and superseded by the terms and conditions set forth in this Agreement."

¶ 17        Section III of the asset purchase agreement provides that Wiczer would be the "temporary escrow agent" and provides the following regarding the purchase price, the earnest money, and the party who would be required to pay the earnest money:

>        "A. Purchase Price. The purchase price for the Purchased Assets shall be $2,150,000.00 (Purchase Price). The Purchase Price shall be increased or dec[r]eased by the proration of customary proratable items such as real estate taxes, insurance, prepaid expenses and similar items as set forth in Article III.F.
>
>        B. Payments at the Closing. Buyer shall pay the preliminary Purchase Price at the Closing as follows:

1. The sum of $400,000 shall be paid to Elliot S. Wiczer (Temporary Escrow Agent) and thereafter to Ticor Title Insurance Company (Escrow Agent), to be held, administered, and disbursed in accordance with the terms of the escrow agreement, in the form attached as Exhibit III.B. (Escrow Agreement), to be executed and delivered by the parties simultaneous with the execution of this Agreement.

2. The balance of the Purchase Price not held in Escrow shall be paid to or for the benefit of Seller pursuant to Seller's Credit Facility and as directed by Seller."

¶ 18        Section IX(B)(2) of the asset purchase agreement regarding conditions precedent to the buyer's obligation to close provides that "[e]ach document required to be delivered by Seller must have been delivered, and each of the other covenants and obligations of Seller in this Agreement must have been performed and complied with in all material respects."

¶ 19        Section X(B)(2) regarding conditions precedent to the seller's obligation to close similarly provides that "[e]ach document required to be delivered and payment required to be made by Buyer must have been delivered or made, and each of the other covenants and obligations of Buyer in this Agreement must have been performed and complied with in all material respects."

¶ 20        The asset purchase agreement also contained an integration clause in section XIV(I):

"I. Entire Agreement and Modification. This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes (along with the documents referred to in this Agreement) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This

Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment."

¶ 21 The termination provision of the asset purchase agreement, section XII, provides as follows:

"A. Termination Events. This Agreement may, by notice given prior to or at the Closing, be terminated

(1) by either Buyer or Seller if a material Breach of any provision of this Agreement has been committed by the other party and such Breach has not been waived;

(2) by (a) Buyer if any of the conditions in Article IX have not been satisfied as of the Closing Date or if satisfaction of such a condition is or becomes impossible (other than through the failure of Buyer to comply with its obligations under this Agreement) and Buyer has not waived such condition on or before the Closing Date; or (b) Seller if any of the conditions in Article X have not been satisfied as of the Closing Date or if satisfaction of such a condition is or becomes impossible (other than through the failure of Seller to comply with its obligations under this Agreement) and Seller has not waived such condition on or before the Closing Date;

(3) by Buyer if Buyer is not satisfied, in its sole discretion, with the results of its due diligence investigation of Seller;

(4) by mutual Consent of Buyer and Seller; or

(5) by either Buyer or Seller if the Closing has not occurred (other than through the failure of any party seeking to terminate this Agreement to comply fully with its

obligations under this Agreement) on or before September 30,[] 2009, unless the parties hereto expressly agree in writing to extend that date.

　　B.　Effect of Termination. Each party's right of termination under Section XII.A. is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of a right of termination will not be an election of remedies. If this Agreement is terminated pursuant to Section XII.A., all further obligations of the parties under this Agreement will terminate, except that the obligations in the Escrow will survive; provided, however, that if this Agreement is terminated by a party because of a Breach by the other party or because one or more of the conditions to the terminating party's obligations under this Agreement are not satisfied as a result of the other party's failure to comply with its obligations under this Agreement, the terminating party's right to pursue all legal remedies will survive such termination unimpaired."

¶ 22　　The escrow agreement is not attached to the asset purchase agreement. There are no exhibits attached to the asset purchase agreement.

¶ 23　　Wiczer received the executed escrow agreement with the Details defendants' signatures, along with some of their checks. Around the time the asset purchase agreement was executed, Wiczer received the remaining earnest money deposit checks from the Details defendants through Rosenbloom, totaling $400,000. Of this total, $325,000 was in Wiczer's Interest on Lawyers Trust Account (IOLTA).

¶ 24　　On October 9, 2009, Wiczer forwarded an email to Rosenbloom, attorney for Details and the Details defendants, that Wojciak was providing notice of his intention to not consummate the transaction. On October 15, 2009, an assistant to Bernard Wiczer forwarded to Rosenbloom an

email, along with a draft of the escrow agreement, requesting that Rosenbloom sign and return the draft so that Wiczer "can make the deposit at Ticor." On October 22, 2009, Rosenbloom forwarded to Wiczer correspondence acknowledging termination of the transaction and demanding return of the earnest money to him on behalf of his clients, Kolber, Winokur, Opfer, and Stuckmann. Wojciak made a demand for return of the earnest money to him instead. Wiczer also made a demand on behalf of Wojciak for reimbursement of costs and expenses in the amount of $98,250.

¶ 25    On October 26, 2009, plaintiffs filed a complaint for interpleader, seeking guidance from the circuit court regarding the proper disposition of the funds held by Wiczer. Plaintiffs Wiczer and Wiczer & Zelmar, LLC, allege in their complaint that upon the termination of the transaction a dispute arose between defendants Kolber, Winokur, Opfer, Stuckmann, Pappas, and Larry Wojciak and plaintiffs regarding the disposition of those funds, each party claiming the right to the entirety of the funds. Cross-plaintiffs and cross-defendant Wojciak filed cross-complaints seeking a declaration that the funds were to be given to them, respectively.

¶ 26    Cross-plaintiffs and cross-defendant Wojciak filed motions for summary judgment. On December 22, 2010, the circuit court entered an order which provided, in relevant part:

"1.    Cross-Plaintiffs' Motion for Summary Judgment is granted in part in that the Court has determined that based on the documents submitted, there is no genuine issue of material fact as to the fact that the escrow agreement being signed by the members of Seller does not constitute Seller's signature on said agreement.

2. The remainder of Cross-Plaintiffs' summary judgment motion and Wojciak's Cross-Motion are denied. The Court makes no finding as to Seller's performance (or lack thereof) under the escrow agreement \*\*\*."[1]

¶ 27    The parties did not appeal this order.

¶ 28    The matter was then reassigned to the Judge LeRoy K. Martin, Jr., who presided over the trial of this matter. Trial took place on November 13, 2012, November 14, 2012, and November 15, 2012.

¶ 29    At trial, Barry Rosenbloom, attorney for the Details member defendants Winokur, Opfer, Kolber, and Stuckmann, was asked whether the escrow agreement signed by the parties, Wojciak Exhibit 3, was the escrow agreement referred to by the asset purchase agreement and he responded, "Yes."

¶ 30    On November 28, 2012, the court rendered its decision in favor of cross-plaintiffs Kolber, Winokur, Opfer and Stuckmann on counts I and II of their cross-complaint against Wojciak, but granted judgment in Wojciak's favor on count III of the cross-complaint. The trial court ruled that count IV of the cross-complaint was moot. The trial court found that Wiczer was acting as the temporary escrow agent and would deliver the escrow money to Ticor but the escrow agreement did not govern because it was "never carried out." According to the trial court, "the failure to deliver the money to Ticor obviates us having any escrow agreement that Mr. Wojciak could make a valid claim to the money under." The trial court further found that the signatures of Kolber, Winokur, Opfer and Stuckmann on the escrow agreement did not constitute the signature of Details. Pursuant to the trial court's order, Wiczer was ordered to deliver the remaining $325,000 of the escrow funds in his IOLTA account to each of the cross-plaintiffs, in accordance

---

[1]    We note that a copy of this order is not in the record but a copy of the order was attached to cross-plaintiffs-appellees' brief and is not disputed by plaintiffs in reply.

with the respective amount of their deposits. On December 18, 2012, Wojciak timely filed a notice of appeal.

¶ 31                                    ANALYSIS

¶ 32        Wojciak argues that the trial court erred as a matter of law in entering judgment in the Details defendants' favor. Wojciak argues that he is entitled to keep the earnest money under the asset purchase agreement and the escrow agreement the Details defendants signed because the asset purchase agreement incorporated the escrow agreement by reference and Details executed the escrow agreement. The Details defendants and cross-plaintiffs-appellees argue that though the individual Details defendants signed the escrow agreement, the escrow agreement was not executed by Details, LLC, which was the actual seller, Wojciak, or Ticor as the escrow holder, and the conditions were not fulfilled; therefore, the escrow agreement is not binding and has no effect, as if it never existed.

¶ 33        The standard of review of a judgment after a bench trial is whether the judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008). A judgment is against the manifest weight of the evidence only if the opposite conclusion is apparent or when the trial court's findings appear to be arbitrary, unreasonable, or not based on the evidence. *Yellow Book Sales & Distribution Co. v. Feldman*, 2012 IL App (1st) 120069, ¶ 36. The interpretation of contracts generally is subject to a *de novo* standard of review, but the factual findings that inform this interpretation are given deference on review and are to be reversed only where they are against the manifest weight of the evidence. *Asset Recovery Contracting, LLC v. Walsh Construction Co. of Illinois*, 2012 IL App (1st) 101226, ¶ 74. Where the trial court has determined the construction of a contract as a matter of law, this court's standard of review is *de novo* and we may interpret the contract

independently of the trial court's judgment. *Pennsylvania Life Insurance Co. v. Pavlick*, 265 Ill. App. 3d 526, 529 (1994). See also *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 44 (same). The court here entered judgment based on its interpretation of the contract. Thus, we review the court's judgment independently and *de novo*.

¶ 34　　　We begin at the outset by summarizing the nature of escrow agreements and clarifying that they are not stand-alone contracts and must be read in conjunction with the underlying sales contract. "An escrow is defined as a written instrument that, by its terms, imports a legal obligation and that is deposited by the grantor with a third party to be kept until the performance of a condition or happening of an event, at which time it is to be delivered to the grantee." *Albrecht v. Brais*, 324 Ill. App. 3d 188, 191 (2001) (citing *Merchants National Bank of Aurora v. Frazier*, 329 Ill. App. 191 (1946)). Escrow instructions constituting part of the same transaction must be construed together, although executed separately. See *Estate of Reinhold v. Mansfield*, 90 Ill. App. 3d 224, 228 (1980). "The escrow agreement does not stand alone and must be read in conjunction with the underlying contract to resolve disputes as to the proper operation of the escrow." *Estate of Reinhold*, 90 Ill. App. 3d at 228 (citing *West Lands Construction Co. v. Calhan*, 124 Ill. App. 2d 453 (1970)). "An escrow document is in no way a substitution for the original contract but is merely an auxiliary instrument created to help implement or execute the primary agreement." *Hakala v. Illinois Dodge City Corp.*, 64 Ill. App. 3d 114, 121 (1978). Questions involving the proper operation of escrow may be resolved by resort to consideration of the escrow agreement in conjunction with the underlying contract. *First National Bank of Thomasboro v. Lachenmyer*, 131 Ill. App. 3d 914, 917 (1985) (citing *Estate of Reinhold*, 90 Ill. App. 3d 224). We thus look to the underlying sales contract in this case, the asset purchase agreement.

¶ 35    When construing a contract, the court's primary objective is to give effect to the intent of the parties, as revealed by the language used in the agreement. *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App. 3d 678, 685 (2009) (citing *Gallagher v. Lenart*, 226 Ill. 2d 208, 232-33 (2007)). If the language of an agreement is facially unambiguous, then courts interpret the contract as a matter of law without the use of extrinsic evidence. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). However, if the language of the contract is susceptible to more than one meaning, then an ambiguity is present, and parol evidence may be admitted to aid the trier of fact in resolving the ambiguity. *Air Safety, Inc.*, 185 Ill. 2d at 462-63. In determining whether an ambiguity exists, the court applies the four corners rule and looks to the language of the agreement alone. *Air Safety, Inc.*, 185 Ill. 2d at 462. Whether an ambiguity is present in a contract is a matter of law subject to *de novo* review. *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1006 (2011).

¶ 36    "It is a fundamental principle of contract law that 'an instrument may incorporate all or part of another instrument by reference.' " *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 743 (2011) (quoting *Provident Federal Savings & Loan Ass'n v. Realty Centre, Ltd.*, 97 Ill. 2d 187, 192-93 (1983)). "However, the reference must demonstrate 'an intention to incorporate the document and make it part of the contract.' " *Shah*, 407 Ill. App. 3d at 743 (quoting *Arneson v. Board of Trustees*, 210 Ill. App. 3d 844, 849-50 (1991)). Contracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents. *Kirschenbaum v. Northwestern University*, 312 Ill. App. 3d 1017, 1029 (2000).

¶ 37    On this point, we agree with Wojciak. The asset purchase agreement indeed incorporated by reference an escrow agreement. The asset purchase contract also required as a condition precedent that the escrow agreement be attached and delivered simultaneously with the asset

purchase agreement, but no escrow agreement is attached. There is thus a facial ambiguity within the four corners of the asset purchase agreement, and so we may consider parol evidence in resolving this ambiguity. The asset purchase agreement does not specify a particular escrow agreement by date, yet there is only one escrow document that was executed by any of the relevant parties, and that is the escrow document executed by Kolber, Winokur, Opfer, Stuckmann, and Pappas. For cross-plaintiffs Kolber, Winokur, Opfer, and Stuckmann to argue that "[t]he Escrow Agreement never existed and cannot ever exist" is disingenuous, considering that the asset purchase agreement specifically incorporates an escrow agreement by reference, and cross-plaintiffs Kolber, Winokur, Opfer, and Stuckmann each signed an escrow document. At trial, Details' attorney, Barry Rosenbloom, admitted that this escrow document was the same escrow agreement referenced throughout the asset purchase agreement.

¶ 38     There is a lack of recent precedent on this particular factual scenario, where a contract references another contract to be attached, but the contract referenced is not actually attached. Long-standing precedent holds that "[w]here a party to a contract has actual knowledge of the terms of a clause that is incorporated by reference as an attachment, but is not actually attached, the clause must be considered to be a part of the contract so that the contract is given the effect intended by the parties." *Burns v. Ford Motor Co.*, 29 Ill. App. 3d 585, 591 (1974) (held same, even where it was "not clear that the omission was accidental").

¶ 39     There are two problems with the escrow document in this case, however. First, Kolber, Winokur, Opfer, and Stuckmann executed the escrow agreement in their individual capacities, and not on behalf of Details, LLC, which was the actual seller under the asset purchase agreement. Wojciak argues that "the Details Defendants agreed to a provision that, after the fact, they decided they were no longer willing to comply with." The problem here is that the Details

member defendants were not the sellers; Details, LLC was. The circuit court's order of December 22, 2010 granting in part cross-plaintiffs Kolber, Winokur, Opfer and Stuckmann's motion for summary judgment ruled as a matter of law that the signatures by the individual Details member defendants did not constitute the signature of Details, LLC. Wojciak did not appeal this order. Even had Wojciak appealed, however, we would readily determine that the individual member defendants' signatures in their individual capacities does not constitute the signature of the entity. The asset purchase agreement required execution of the escrow agreement by the relevant parties: "to be executed and delivered by the parties simultaneous with the execution of this Agreement." Unless signed by the parties, the escrow does not supersede the original contract, merge the original contract into it or otherwise affect the contract of the parties. *Hakala v. Illinois Dodge City Corp.*, 64 Ill. App. 3d 114, 121 (1978). The Details member defendants signed the escrow agreement only in their individual capacities. No one signed the escrow agreement on behalf of Details, LLC. Thus, the seller, Details, LLC, did not agree to the provisions in the escrow agreement.

¶ 40    Second, the terms of the escrow agreement contradict the escrow provision in the asset purchase agreement. The escrow agreement required deposit of earnest money in escrow by the *seller* but return of the earnest money to the *buyer*, instead of the seller, if the transaction did not close. The asset purchase agreement, on the other hand, required deposit of the earnest money in escrow by the *buyer* and return to the buyer if the transaction did not close. "A valid escrow agreement requires an agreement between a grantor and a grantee as to the conditions of deposit, delivery of the deposited item to the escrowee, and communication of the agreed upon conditions to the escrowee." *Melrose Park National Bank v. Carr*, 249 Ill. App. 3d 9, 14 (1993) (citing *Johansson v. United States*, 336 F.2d 809 (5th Cir. 1964)). Here, even had the escrow agreement

been executed by Details, LLC, its terms conflict with the escrow provision in the asset purchase agreement. The escrow agreement provides that the *seller* would provide the earnest money, while the asset purchase agreement provides that the *buyer* would provide the earnest money. Wojciak and Details, LLC executed only the asset purchase agreement, which provided that the earnest money would be paid by Wojciak (as a promoter on behalf of an entity to be formed). There was no meeting of the minds regarding the earnest money to be deposited in escrow and no agreement.

¶ 41        Further, the conditions of the escrow were not satisfied. The money was held by Wiczer only as temporary escrowee and the escrow holder never executed the escrow document. Further, Wojciak himself never executed the escrow document. The escrow document was not executed and delivered simultaneously with the asset purchase agreement, which was a condition precedent to the escrow agreement being effective as integrated into the asset purchase agreement. Wojciak canceled the contract sales contract without any breach.

¶ 42        "Where the conditions of the escrow have been satisfied, the escrowee is under an obligation to deliver the subject matter deposited with him to the grantee or obligee, whereas if the conditions of the escrow are not met, the escrowee must return the subject matter to the depositor." *Columbia Homes, Inc. v. Sirois*, 115 Ill. App. 3d 651, 653 (1983). Under the circumstances in this case, the earnest money is rightfully returned to the depositors.

¶ 43                                CONCLUSION

¶ 44        We hold that the asset purchase agreement incorporated by reference the escrow agreement, but (1) the escrow agreement was never fully executed by the correct parties to the transaction and (2) the terms of the escrow agreement conflicted with the escrow provision in the underlying asset purchase agreement. There thus was no effective escrow agreement. Under

these circumstances, the only rightful result is that the escrow funds must be returned to the depositors as the circuit court ordered.

¶ 45        Affirmed.