2016 IL App (1st) 142767

FIRST DIVISION
March 28, 2016

No. 1-14-2767

| | | |
|---|---|---|
| MICHAEL G. KOEHLER, Ph.D, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and Cross-Appellant, | ) | Cook County, |
| | ) | |
| v. | ) | |
| | ) | No. 11 L 2147 |
| THE PACKER GROUP, INC.; PACKER | ) | |
| ENGINEERING, INC.; KENNETH PACKER; | ) | |
| WARREN DENNISTON; and CHARLOTTE SARTAIN, | ) | Honorable |
| | ) | Raymond W. Mitchell |
| | ) | and Thomas J. Lipscomb, |
| Defendants-Appellants and Cross-Appellees. | ) | Judges Presiding. |

PRESIDING JUSTICE LIU delivered the judgment of the court, with opinion.
Justice Connors and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1     Pursuant to an employment agreement with The Packer Group, plaintiff Dr. Michael Koehler was employed as chief executive officer of its wholly owned subsidiary, Packer Engineering. Plaintiff alleged that he was first demoted and then discharged from this position after revealing to the company's board that its founder and chairman, Dr. Kenneth Packer, had engaged in financial improprieties. Plaintiff sued Packer Engineering and The Packer Group for breach of contract. He also sued Dr. Packer; Charlotte Sartain, board secretary and vice president of finance for The Packer Group; and longstanding board member Warren Denniston for tortious interference with contract, claiming they each induced The Packer Group to breach its agreement with him. After a three-week trial, the jury returned a verdict for plaintiff.

¶ 2    On appeal, defendants contend that plaintiff's claims against them should have been resolved by binding arbitration and that the circuit court erred in granting plaintiff leave to file a late jury demand absent a showing of good cause. Beyond this, they claim no error with respect to the jury's verdict in plaintiff's favor on the breach of contract claim against Packer Engineering and The Packer Group (the corporate defendants). With respect to the tortious interference claim against Dr. Packer and Ms. Sartain (the individual defendants),[1] defendants raise additional claims of error, arguing that: (1) they were entitled to judgment as a matter of law, (2) the circuit court improperly instructed the jury, (3) the jury's verdict was against the manifest weight of the evidence, (4) the award of compensatory damages was improper in several respects, (5) punitive damages were not warranted, and (6) the amount of punitive damages awarded was excessive.

¶ 3    On cross-appeal, plaintiff additionally argues the circuit court improperly limited his damages for breach of contract to severance pay, improperly admitted evidence of his post-termination earnings, and failed to award him the full amount of costs he requested as a prevailing party. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                            BACKGROUND

¶ 5    In his initial complaint against the corporate defendants, plaintiff alleged that, on October 22, 2008, The Packer Group offered him the position of chief executive officer of Packer Engineering for an initial term of four years, after which point his employment would automatically become "at-will." The employment agreement was memorialized in a letter signed by plaintiff, Dr. Packer as chairman of the board, and Ms. Sartain as executive vice president of finance. The employment agreement established the term of plaintiff's employment, his duties, and his compensation, providing as follows:

---

[1]    Mr. Denniston is not a party to this appeal.

"Term of Agreement

The term of your employment under this Agreement will be for a period of four (4) years, beginning on the date of employment with the Company, which will begin on December 1, 2008. Following this initial term of employment, unless otherwise mutually agreed upon, employment will revert to 'at will' and subject to the terms of similarly situated employees of the Company at that time, except under the provisions of the section entitled 'Severance Pay Arrangement.'

\* \* \*

Severance Pay Arrangement

In the event your employment is terminated by the Company without 'cause,' or by you as a result of 'constructive cause,' or due to a 'change of control' of the Company, you will be entitled to a severance payment of one (1) year of salary and benefits, plus the targeted incentive compensation for that year of employment. This severance amount will be paid out during the course of one (1) year from the date of termination."

¶ 6    The agreement also contained the following arbitration clause:

"Dispute Resolution

Any material breach, dispute, or claim resulting from this Agreement shall be settled by binding arbitration in accordance with the laws of the State of Illinois. Both you and the Company agree to waive their respective rights to dispute resolution in a court of law. The costs associated with arbitration will be paid by the party(ies) as designated by the arbitrator."

¶ 7     Plaintiff further alleged that, as CEO of Packer Engineering and, beginning in June 2009,

as a member of the board of directors, he reviewed financial records of The Packer Group and learned that Dr. Packer was, without board authorization, diverting money from The Packer Group to New Vermillion Iron Works, an independent company purchased by Dr. Packer. Plaintiff investigated, became aware of "potentially illegal financial activities" between The Packer Group and New Vermillion, and disclosed these improprieties to senior leadership and select members of the board of directors in or around September 2009. Plaintiff further alleged that, when he refused to participate in or turn a blind eye to the improprieties, Dr. Packer forbid him from reviewing The Packer Group's financials or attending board meetings.

¶ 8    According to plaintiff, Dr. Packer refused to cooperate with a special committee appointed in the spring of 2010 to investigate the situation. Plaintiff alleged that Dr. Packer formed a new management committee to run The Packer Group and Packer Engineering called the Chief Executive Officer Counsel (CEOC) and that, in retaliation for his attempts to fulfill his duties as CEO and disclose Dr. Packer's conduct, he received a letter from the CEOC on May 7, 2010 purporting to demote him. Plaintiff alleged that, shortly thereafter, he was presented with an ultimatum: accept the demotion or be terminated. He chose the latter and sued. In his complaint, plaintiff sought the full amount of his unpaid annual salary and benefits for the two-and-a-half years remaining on his agreement, one year of severance pay, the value of his stock, amounts due to him under the company's incentive compensation plan, and punitive damages.

¶ 9    The corporate defendants filed an answer largely denying these allegations and asserting plaintiff's own breach of the material terms of the employment agreement as an affirmative defense. The circuit court granted plaintiff's motion to strike the affirmative defense as conclusory and set a deadline for defendants to file any amended affirmative defenses. Discovery commenced throughout the summer and fall of 2011. Defendants responded to plaintiff's written

discovery requests and produced documents—serving an Illinois Supreme Court Rule 214(c) (eff. Jan. 1, 1996) affidavit of completeness—but did not propound their own discovery.

¶ 10    On September 29, 2011, the corporate defendants moved to dismiss plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)), arguing that the arbitration provision in plaintiff's employment agreement deprived the circuit court of subject matter jurisdiction and required that all disputes arising under the agreement be submitted to arbitration. In response, plaintiff argued that the corporate defendants had waived their right to arbitrate and that he would suffer prejudice if arbitration was compelled so late in the litigation. The circuit court denied the motion, concluding that the actions taken by the corporate defendants from the inception of the lawsuit were inconsistent with a right to arbitrate. Specifically, the circuit court determined that "the weight of authority in Illinois and in other jurisdictions supports the proposition that answering a complaint without asserting the contractual right to arbitrate results in a waiver of that right."

¶ 11    Plaintiff subsequently filed an amended complaint adding a claim for tortious interference with contract against the individual defendants. Defendants again sought to enforce the arbitration clause. The individual defendants contended both that the tortious interference claim against them fell within the scope of the agreement because it "result[ed] from" plaintiff's employment, and that—although they did not sign the agreement in their individual capacities— they could enforce the arbitration clause as agents of the corporate defendants. Defendants alternatively urged the court, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), to find that plaintiff failed to state a claim upon which relief could be granted.

¶ 12    The circuit court dismissed the new tortious interference claim with prejudice, noting that

plaintiff had failed to state what each of the individual defendants did to induce a breach of the employment agreement. The circuit court denied defendants' motion to dismiss for lack of subject matter jurisdiction "for the reasons stated in [its] Order of November 9, 2011," *i.e.*, the order denying the corporate defendants motion to dismiss and finding those defendants waived their right to arbitrate. Because it dismissed the new tortious interference claim pursuant to section 2-615, the court noted: "there is nothing at issue presently that was not before the court when it previously denied Defendants' argument that the case was subject to mandatory arbitration."

¶ 13    Plaintiff was ultimately allowed to file a second amended complaint and, this time, the circuit court found his allegations were sufficient to state a claim for tortious interference with contract. Although the claim against the individual defendants was thus reinstated, defendants did not ask the court at that time to reconsider its arbitration ruling with respect to those defendants. Instead, defendants filed an answer asserting several affirmative defenses. They did not assert the arbitration clause as an affirmative defense but this time did deny plaintiff's allegations that jurisdiction and venue were proper in the trial court. The parties proceeded with discovery and a jury trial was scheduled.

¶ 14    Before trial, the individual defendants raised the arbitration clause again in their motions for summary judgment. The circuit court denied the motions, agreeing with plaintiff that: (1) the tortious interference claim did not "result from" the agreement; (2) the individual defendants were not parties to the agreement capable of enforcing its terms; and (3) they had waived their right to compel arbitration by failing to invoke the arbitration clause in their motions to dismiss, answering the complaint and asserting affirmative defenses, participating in discovery, and waiting too long to raise the issue.

¶ 15    A three-week jury trial commenced on May 6, 2014, during which the parties presented significant evidence in support of their respective versions of the events leading up to the termination of plaintiff's employment. Plaintiff argued that he was demoted and then terminated after revealing Dr. Packer's financial improprieties to the company's board, and that Dr. Packer, Ms. Sartain, and Mr. Denniston acted to cover up the wrongdoing, prevent plaintiff from performing his duties as CEO, and punish him for interfering in their running of the company. Defendants denied any wrongdoing, argued that plaintiff performed poorly as a CEO, and that he was offered but refused another position within the company.

¶ 16    In addition to his own extensive testimony, plaintiff presented the testimony of Alan Wilks, the employee who first contacted him about the CEO position at Packer Engineering; Deborah Hockman, a board member assigned to "coach" plaintiff in his duties as CEO in November 2009; Edward Caulfield, president and former vice president of Packer Engineering; Christine Tomczak, a former assistant to Charlotte Sartain; Richard Thompson, a certified public accountant; William Wortel and Bruce Duffield, Packer Engineering's outside counsel; board member Russell Johnson; and defendants Warren Denniston and Charlotte Sartain. Defendants additionally presented the testimony of Dr. Packer and Christopher Schemel, a Packer Engineering employee who was critical of plaintiff's performance as CEO. Together, the parties submitted over 140 exhibits at trial.

¶ 17    The jury reached a verdict in plaintiff's favor on both counts and judgment was entered on the jury's verdict on June 5, 2014. For his breach of contract claim against the corporate defendants, the jury awarded plaintiff damages in the amount of $100,000. For his tortious interference with contract claim against the individual defendants, the jury awarded plaintiff $720,000 in compensatory damages and $1.2 million in punitive damages from Dr. Packer, and

$205,000 in compensatory damages and $150,000 in punitive damages from Ms. Sartain. Defendants' post-trial motion was denied by the circuit court on August 28, 2014, and they timely filed their notice of appeal on September 5, 2014. Jurisdiction is proper pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 18                                    ANALYSIS

¶ 19                              A. Arbitration Provision

¶ 20    On appeal, defendants contend the circuit court erroneously denied their request to arbitrate the claims raised in this case. Plaintiff concedes that his breach of contract claim against the corporate defendants falls within the scope of the arbitration provision, but argues that his claim against the individual defendants for tortious interference with contract did not "result from" the employment agreement. Plaintiff further argues that all defendants waived their right to arbitrate by "participating in this litigation and submitting and responding to substantive issues before the [c]ourt prior to seeking arbitration," *i.e.*, by filing an answer, asserting an affirmative defense, and responding to written discovery. Defendants maintain, however, that their "[l]imited legal maneuvering" and "participat[ion] in the judicial forum" do not demonstrate an abandonment of their right to compel arbitration, that the individual defendants are entitled to invoke the arbitration provision as agents of the corporate defendants or as third-party beneficiaries, and that the tortious interference claim against the individual defendants is within the scope of the arbitration provision. We address these issues in turn, considering the rights of the corporate defendants and the individual defendants separately.

¶ 21                    1. Waiver by the Corporate Defendants

¶ 22    When reviewing a circuit court's ruling on whether a party has waived its right to

arbitrate, we review findings of fact for an abuse of discretion and questions of law *de novo*. *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶¶ 24-26. Arbitration is a favored method of settling disputes in Illinois. *Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1095 (2001). Indeed, "public policy concerns *** favor[ing] arbitration outweigh concerns regarding judicial economy, duplication of effort, or possibly inconsistent results." *Id.* at 1096 (citing *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 76-77 (1998)). Although disfavored, waiver will be found where "a party conducts itself in a manner inconsistent with the arbitration clause, thereby demonstrating an abandonment of that right." *Northeast Illinois Regional Commuter R.R. Corp. v. Chicago Union Station Co.*, 358 Ill. App. 3d 985, 996 (2005). "The existence of a waiver is determined by the types of issues submitted, not by the number of papers filed with the court," (*Kostakos v. KSN Joint Venture No. 1*, 142 Ill. App. 3d 533, 536-37 (1986)), with the "crucial inquiry" being "whether the party has acted inconsistently with its right to arbitrate" (internal quotation marks omitted) (*Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 376 Ill. App. 3d 411, 425 (2007)). "A party acts inconsistently with its right to arbitrate when it submits arbitrable issues to a court for decision." *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1174 (2008).

¶ 23    At the outset, plaintiff finds it "significant" that defendants chose not to seek interlocutory review, pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010), of the circuit court's orders denying arbitration, arguing that it is "disingenuous" for them to press their right to arbitrate now, after over four years of litigation has passed. The language of Rule 307(a), however, is unambiguously permissive, stating that an appeal "may" be taken from an interlocutory order, but not requiring that it be to preserve later review of that order. *Anderson v.*

*Financial Matters, Inc.*, 285 Ill. App. 3d 123, 135 (1996). The timing of defendants' appeal therefore has no bearing on our decision.

¶ 24 Nor are we persuaded that the corporate defendants' limited participation in discovery was sufficient, on its own, to constitute waiver. Where they responded to plaintiff's discovery requests and complied with the circuit court's discovery orders, but did not propound their own discovery requests or depose any witnesses prior to asserting their right to arbitrate, defendants' participation was merely responsive and not inconsistent with the right to arbitrate. Compare *Edward Electric Co. v. Automation, Inc.*, 164 Ill. App. 3d 547, 554 (1987) (noting counter-defendant initiated no discovery and holding its "participation in the litigation was merely responsive") and *Kostakos*, 142 Ill. App. 3d at 537 (noting defendants did not serve interrogatories or take depositions and affirming circuit court's order granting their motion to compel arbitration) with *Woods v. Patterson Law Firm, P.C.*, 381 Ill. App. 3d 989, 996 (2008) (concluding defendants "actively participated in discovery" by issuing interrogatories and seeking to take depositions, discovery tools not readily available in arbitration proceedings).

¶ 25 By filing an answer asserting an affirmative defense unrelated to the arbitration provision, however, the corporate defendants in this case waived their right to arbitrate plaintiff's claims against them. Defendants argue that the mere act of answering a complaint does not constitute waiver. As the circuit court noted, however, the cases defendants rely on for this proposition represent the exception rather than the rule. Illinois courts have found that filing an answer or counterclaim does not result in automatic waiver of the right to arbitrate only where a defendant is statutorily required to assert responsive claims within a short time in order to preserve lien rights. See*, e.g., Edward Electric*, 164 Ill. App. 3d at 549, 554-55 (noting that "[a] mechanic's lien is valid only if each statutory requirement *** is scrupulously observed" and

holding the defendant's participation in the litigation did not constitute a waiver because it was "merely responsive" and the pleadings it filed were merely "to protect its rights"); *TSP-Hope*, 382 Ill. App. 3d at 1175-76 (holding defendant did not waive the right to arbitrate by filing an answer and counterclaim to prevent forfeiture of a lien). Where, as here, a defendant files an answer without simultaneously asserting the right to arbitrate, Illinois courts generally find that a waiver has occurred. Compare *Gateway Drywall & Decorating, Inc. v. Village Construction Co.*, 76 Ill. App. 3d 812, 817 (1979) (waiver where defendant filed an answer and setoff claims without asserting the right to arbitrate); *Epstein v. Yoder*, 72 Ill. App. 3d 966, 972 (1979) (waiver where defendant filed an answer omitting any reference to arbitration) with *Kostakos*, 142 Ill. App. 3d at 535-36 (no waiver where defendant filed an answer asserting the arbitration provision at issue as an affirmative defense); *Kessler, Merci, & Lochner, Inc. v. Pioneer Bank & Trust Co.*, 101 Ill. App. 3d 502, 509 (1981) (no waiver where defendant filed an answer that included the affirmative defense of the arbitration agreement, along with a counterclaim in the alternative); *Jenkins v. Trinity Evangelical Lutheran Church*, 356 Ill. App. 3d 504, 508 (2005) (no waiver where defendants first filed a motion for summary judgment asserting arbitration as the exclusive remedy for disputes between the parties and later filed an answer specifically raising the court's lack of jurisdiction as an affirmative defense).

¶ 26    Defendants raise two additional reasons why their answer should not be construed as a waiver of the right to arbitrate the claims in this case. They first contend that they denied plaintiff's allegations that jurisdiction and venue were proper in the circuit court. Without considering whether this alone would be sufficient to preserve their right to arbitrate, we note that this is not what the corporate defendants in fact did. In their answer to plaintiff's initial complaint they stated that they were "without knowledge or information sufficient to form a

belief as to the truth" of those allegations, language we find is not the equivalent of a denial.

¶ 27    We furthermore reject defendants' reliance on *People ex rel. Delisi Construction Co., v. Board of Education, Willow Springs School District 108*, 26 Ill. App. 3d 893, 895-96 (1975) for their proposition that "[w]here a defendant contests the existence of a valid and binding contract between the parties, waiver of a contractual right to arbitrate cannot occur until such time as a court has found such a contract to exist." In *Delisi*, the defendant school board told the plaintiff construction company that it had submitted the winning bid on a project and could begin work, only to rescind the communication and state that it had awarded the contract to another bidder. *Id.* at 894. The plaintiff sought to enforce the parties' communications as a binding offer and acceptance, while the defendant contended no contract had ever been formed and disputed the jurisdiction of the court to consider the claim of damages. *Id.* Under these circumstances, the appellate court held the defendant did not waive its right to arbitrate the amount of damages by waiting to assert that right until after the circuit court found a valid contract existed. *Id.* at 896. *Delisi* is distinguishable from cases, like this one, where the parties agree that a contract exists. See *Diersen v. Joe Keim Builders, Inc.*, 153 Ill. App. 3d 373, 376 (1987) (finding *Delisi* inapplicable where the parties fully executed a contract and agreed it existed, but disagreed regarding whether it was valid and enforceable). Here, although defendants claim their answer "denied the existence of the contract *as it was alleged by the [p]laintiff*" (emphasis added), this is simply another way of stating the parties disagreed on matters of contract interpretation. Unlike the defendant in *Delisi*, the corporate defendants in this case not only acknowledged the existence of an employment agreement between plaintiff and the corporate defendants from the start, but relied on it to assert the affirmative defense of plaintiff's breach. Accordingly, we find

*Delisi* inapposite.[2]

¶ 28    By including in their answer an affirmative defense other than the arbitration provision itself, the corporate defendants furthermore submitted an arbitrable issue to the circuit court for its consideration. Defendants acknowledge that they asserted a breach of contract by plaintiff as an affirmative defense, but insist—because the court dismissed the defense on procedural grounds (*i.e.*, the failure to plead sufficient facts) and they elected not to amend—that they "never *submitted* that affirmative defense to the [c]ourt for decision" (emphasis added). This distinction is not relevant to our analysis. A party need not move for summary judgment, seek a judgment on the pleadings, or participate in a trial on the merits for an issue to fairly be considered "submitted" to the court. *Gateway Drywall*, 76 Ill. App. 3d at 816 (declining to so construe *Applicolor, Inc. v. Surface Cumbustion Corp.*, 77 Ill. App. 2d 260 (1966)); see also *Cencula v. Keller*, 152 Ill. App. 3d 754, 758 (1987) (defendant "submitted arbitrable issues to the trial court for determination" by filing an answer alleging additional credits offsetting his liability, thus "put[ting] into issue many facts which appear[ed] to fall within the ambit of the [parties'] arbitration clause"). Thus, the corporate defendants not only failed to assert the arbitration provision as an affirmative defense, but submitted the arbitrable issue of an unrelated affirmative defense to the circuit court for resolution. These actions were inconsistent with the right to arbitrate and constituted a waiver of that right.

¶ 29    Accordingly, the circuit court did not err in ruling the corporate defendants waived their right to arbitrate the claims against them in this case.

---

[2]    *Delisi* is further distinguishable where the arbitration clause at issue in that case provided that arbitrable questions would be decided in accordance with the Construction Industry Arbitration Rules, which in turn provided that " 'no judicial proceedings by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.' " *Delisi*, 26 Ill. App. 3d at 896. No equivalent rules are applicable in this case.

¶ 30          2. The Individual Defendants' Ability to Enforce the Agreement

¶ 31     It is undisputed that Dr. Packer and Ms. Sartain signed the employment agreement as corporate representatives and not in their individual capacities. Plaintiff argues that they are therefore incapable of enforcing the arbitration provision, pursuant to the general rule that "under basic principles of contract law, only parties to [an] arbitration contract may compel arbitration or be compelled to arbitrate." *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 55. The circuit court agreed, citing this general rule in its opinion and order denying the individual defendants' motions for summary judgment.

¶ 32     Defendants urge us to adopt an exception to this rule, recognized to some extent in cases applying the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2012)), that agents of a signatory can enforce arbitration agreements entered into by their principal. See, *e.g.*, *Howells v. Hoffman*, 209 Ill. App. 3d 1004, 1008-09 (1991) (applying federal law to a case involving interstate commerce and holding that a stockbroker could enforce an arbitration agreement entered into between the brokerage house and its client); *Arnold v. Arnold Corp.–Printed Communications for Business*, 920 F.2d 1269, 1281-82 (6th Cir. 1990) (holding that non-signatory officers and members of a corporation's board of directors could enforce an arbitration agreement entered into by the corporation). Defendants have directed our attention to no case, however, in which a court applying the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2010)) has adopted the exception. In the absence of such authority, we find no compelling reason to depart from the general rule that only parties to an agreement may enforce it. Had the parties in this case wished to arbitrate future claims against the individual defendants, they could easily have included an express provision to this effect in their agreement. Because they did not, we likewise reject defendants' argument that they are entitled to enforce the arbitration provision

as third-party beneficiaries. See *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009) (the intention to directly, as opposed to incidentally, benefit a third party "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs").

¶ 33    Even were we to adopt an exception extending the protection of an arbitration provision to a signatory's disclosed agents, it seems unlikely it would apply here, where plaintiff's claim against the individual defendants is based on allegations that they acted *outside* of the scope of their agency to advance their own interests at the company's expense. In a supplement to oral argument, defendants refer us to two cases cited in their brief, *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492 (2002) and *Rao v. Rao*, 718 F.2d 219 (7th Cir. 1983), as examples of cases where courts permitted individual defendants to enforce arbitration agreements signed by their principals, even though the individuals were alleged to have acted outside of their employment. We find these cases unpersuasive. The court in *Bass* was never called upon to decide this issue where the claims against the non-signatory agent were settled before the case reached the appellate court. 328 Ill. App. 3d at 494-95. And in *Rao*, the court did not specifically address the ability of the individual defendant to compel arbitration as an agent because it concluded that he was in fact a party to the contract. 718 F.2d at 225.

¶ 34    We conclude that the individual defendants were not entitled to enforce the arbitration provision in plaintiff's employment agreement. Because we affirm the circuit court's judgment on this basis, we need not consider whether the conduct of these defendants would otherwise have constituted a waiver of that right or whether plaintiff's claim against them "resulted from" the employment agreement.

¶ 35                                    B. Jury Demand

¶ 36    Defendants further contend that the circuit court erred in allowing plaintiff to file an untimely jury demand. It is undisputed that plaintiff did not initially request a jury trial when he filed his complaint on February 25, 2011. At a status hearing over a year later, on May 7, 2012, plaintiff orally moved for leave to do so in connection with his amended complaint, a request the court granted. In a civil case, a plaintiff generally forfeits his right to a trial by jury if he fails to file a jury demand with the clerk at the time the action is commenced. 735 ILCS 5/2-1105(a) (West 2010). "A party seeking to file a late jury demand must show good cause for the delay and an absence of prejudice or inconvenience." *Baldassari v. Chelsa Development Group, Inc.*, 195 Ill. App. 3d 1073, 1077 (1990). Because "[a] motion to file a late jury demand is addressed to the sound discretion of the trial court, *** absent an abuse of [that] discretion, the court's determination with respect to allowance or denial of the motion should not be disturbed." *Brown v. Scotillo*, 104 Ill. 2d 54, 59-60 (1984).

¶ 37    Defendants argue that plaintiff was required to show good cause beyond the mere fact that he was amending his complaint or had inadvertently failed to request a trial by jury at the outset of the case. They further contend that they were prejudiced by the late filing because it meant they did not know until over a year into the litigation that plaintiff would seek a jury trial and, by that point, the circuit court had already found the corporate defendants waived their right to arbitration.[3]

¶ 38    Plaintiff argues that defendants forfeited this issue by failing to make a contemporaneous objection or raise the claim of error in their post-trial motion. Although defendants state plaintiff's motion for leave was granted over their objection, this is not indicated in the circuit

---

[3]    It is unclear how this fact demonstrates prejudice to defendants, where they have always maintained, as they do now on appeal, that they did *not* waive their right to arbitrate. Defendants do not argue, for example, that they would have sought interlocutory review of the circuit court's ruling on that issue if they had known that plaintiff would seek a jury trial.

court's order and defendants direct our attention to nothing else in the record on appeal indicating a contemporaneous objection was made. Plaintiff, for his part, insists that no defendant objected to the jury demand at any time in the circuit court. On this record, where the circuit court's order does not indicate that a contemporaneous objection was made or provide the court's reasoning, and where a transcript of the status conference or bystander's report is not provided, we are unable to conclude that the circuit court abused its discretion. See *H. Vincent Allen & Associates, Inc. v. Weis*, 63 Ill. App. 3d 285, 296 (1978) (reviewing court was unable to reach the issue where the record on appeal contained no objection by the defendant at trial to proceeding with a jury). In their reply, defendants blame the lack of documentation on plaintiff for "improperly" making an oral, as opposed to a written motion. The authority they cite for the proposition that plaintiff was required to make a written motion, however, makes no mention of such a requirement. See 735 ILCS 5/2-1105 (West 2010); *Brown*, 104 Ill. 2d 54. We see no reason the circuit court should not have treated plaintiff's oral motion like any other motion. See *Modern Mailing Systems, Inc. v. McDaniels*, 191 Ill. App. 3d 347, 351 (1989) ("an oral motion *** seeks relief from the court just as surely as a signed, written motion"). It is furthermore well established that "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984) (where no transcript existed, there was no basis for holding the trial court abused its discretion in denying a motion). "Without an adequate record preserving the claimed error, [we] must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005). Accordingly, we hold the circuit court did not err in granting plaintiff's motion for leave to file a late jury demand.

¶ 39                              C. Tortious Interference with Contract

¶ 40    Defendants additionally argue that the judgment entered against the individual defendants for tortious interference with contract must be reversed because the claim fails as a matter of law, the circuit court failed to properly instruct the jury, and the jury's verdict was against the manifest weight of the evidence. For the reasons that follow, we affirm the circuit court's judgment.

¶ 41                          1. Judgment As a Matter of Law

¶ 42    The individual defendants initially argue that plaintiff's claim for tortious interference with contract fails as a matter of law, such that they were entitled to dismissal, summary judgment, a directed verdict, and a judgment notwithstanding the verdict. The elements of the claim are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." (Internal quotation marks omitted.) *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989). We review *de novo* a circuit court's determination of whether a claim fails as a matter of law. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 349 (2003) (dismissal); *Seymour v. Collins*, 2015 IL 118432, ¶ 42 (summary judgment); *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37 (directed verdict and judgment *n.o.v.*).

¶ 43    "It is settled law that a party cannot tortiously interfere with his [or her] own contract ***." *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 884 (1997). The individual defendants contend that they were not outsiders capable of tortious interference because they signed the employment agreement on behalf of the corporate defendants, were shareholders, and comprised a majority of the board of directors and the board's managing

committee. "The mere fact that [a] defendant was acting as a corporate officer," however, "will not render the defendant and the corporation identical." *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 176 (2003). The situation in *Rao*, 718 F.2d at 225, on which defendants rely, is distinguishable where the defendant in that case was the company's *sole* officer, shareholder, and director of the company. *Id.* Nor can plaintiff's earlier failed attempt to pierce the corporate veil be construed as an admission with respect to the claims he later took to trial. See *Bargman v. Economics Laboratory, Inc.*, 181 Ill. App. 3d 1023, 1032 (1989) ("alternative fact pleading made in good faith cannot be used as an admission against interest").

¶ 44    Defendants cite a number of cases standing for the related propositions that the purpose of a corporate entity is to immunize officers from individual liability so that they can be free to act in the company's best interests (see, *e.g.*, *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 373 (2004)) and courts are reluctant to recognize actions by employees against employers for conduct within the scope of their duties (see, *e.g.*, *Daup v. Cellular, Inc.*, 737 N.E.2d 128, 137-38 (Ohio Ct. App. 2014)). Plaintiff presented evidence at trial in support of his theory of liability, however, that the individual defendants acted in their own self-interest, outside the scope of their duties, and to the detriment of plaintiff and the corporate defendants. Defendants have made no convincing argument for why plaintiff's claim for tortious interference with contract fails as a matter of law.

¶ 45                                      2. Jury Instructions

¶ 46    Defendants contend their proposed jury instructions for tortious interference with contract were erroneously denied with respect to three issues: actual malice, the conditional privilege or business judgment rule, and proximate cause.[4] A litigant is entitled to clear and fair jury

---

[4]    Defendants also argue the circuit court erred in instructing the jury that "a defendant that is liable for tortious interference is liable for the entire loss that he has caused, irrespective of the terms of the

instructions on each theory that is supported by the evidence; it is error, however, for a circuit court to give an instruction that is not based on the evidence. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 100 (1995). "The question of what issues have been raised by the evidence is within the discretion of the trial court." *Id.* Even where the evidence is slight, we "may not reweigh it or determine if it should lead to a particular conclusion." *Id.* We will therefore not reverse based on an improper instruction unless it is evident that the instruction "clearly misled the jury." *King v. Clemons*, 264 Ill. App. 3d 138, 143 (1994).

¶ 47 Illinois courts "recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *HPI Health Care*, 131 Ill. 2d at 157. Because "the duty of corporate officers and directors to their corporations' shareholders outweighs any duty they might owe to the corporations' contract creditors," our supreme court has recognized that corporate officers and directors are privileged "to use their business judgment and discretion on behalf of their corporations." *Id.* A defendant who is otherwise protected by the privilege, however, "is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to [the] privilege." *Id.* at 158. In such cases, "it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *Id.* at 156. In this context, "[t]he term 'malicious,' *** simply means that the interference must have been intentional and without justification." *Id.* at 156-57. In *HPI Health Care*, our supreme court provided the following illustration of these principles:

"For example, a hospital management company, whose privilege is based upon

the management company's role in exercising business judgment on behalf of the

contract." Because, as explained *infra*, we affirm the circuit court's ruling that plaintiff's damages for tortious interference with contract were not limited to the amount of damages he could recover for breach of contract, we conclude the circuit court did not abuse its discretion in issuing this instruction to the jury.

company's hospital, would not be justified in inducing a breach of contract solely for the management company's gain, or solely for the purpose of harming the plaintiff, since such conduct would not have been done to further the hospital's interests." *Id.* at 158-59.

¶ 48    Here, defendants contend the circuit court erred by refusing to instruct the jury that plaintiff was required to prove the individual defendants acted with actual malice. In the absence of an Illinois Pattern Jury Instruction on this cause of action, the circuit court rejected defendants' proposed instruction, which stated as follows:

"In order to prove that [the individual defendants] intentionally and unjustifiably induced [the corporate defendants] to breach the contract, [plaintiff] must prove that [the individual defendants] acted with actual malice. In order to establish actual malice, [plaintiff] must prove that [the individual defendants] acted intentionally and unjustifiably: (1) solely for their own personal gain; and/or (2) solely for the purpose of harming Dr. Koehler."

¶ 49    The court instead gave the following instructions, modified and adopted from those proposed by plaintiff and based on the same authority as defendants' proposed instruction:

"Plaintiff has the burden of proving each of the following propositions in his claim for tortious interference with the Employment Agreement against [the individual defendants]:

First, that [the individual defendants] intentionally and without justification induced a contractual breach of the Employment Agreement."

* * *

The law recognizes that corporate officers enjoy a privilege to use their

business judgment and discretion when acting in the best interests of the corporation. This is also known as the business judgment rule.

This privilege does not apply where the conduct of the corporate officers and directors was unjustified, such as when the officers or directors act solely out of self-interest and/or solely to harm the plaintiff.

Thus, in order to prove that [the individual defendants] intentionally and unjustifiably induced [the corporate defendants] to breach the contract, [plaintiff] must prove that [the individual defendants] acted solely out of self-interest, and/or solely to harm [plaintiff].

¶ 50 Although the circuit court refused to include the words "actual malice," the instruction given otherwise conveyed the same information to the jury as defendants' proposed instruction, *i.e.*, that plaintiff was required to prove intentional and unjustifiable conduct on the part of the individual defendants by establishing that they acted solely for their own personal gain or to harm plaintiff. Defendants separate proposed definition of "actual malice" as "more than ill will," "more than mere malice," and "a positive desire and intention to injure another person," although it may resemble the ordinary definition of the word—*i.e.*," '[t]he desire to harm others, or to see others suffer; ill will; spite' " (*Martin v. State Journal*-Register, 244 Ill. App. 3d 955, 962 (1993) (quoting American Heritage Dictionary of the English Language 790 (1975)))—differs significantly from its meaning as a term of art in this context (*Scholwin v. Johnson*, 147 Ill. App. 3d 598, 607-08 (1986) ("The term 'malicious' used in this context does *not* connote ill will, hostility, or an intent to injure, but it means intentionally and without just cause." (emphasis added.)). Given the real potential that jurors would mistakenly construe the words "actual malice" according to their plain meaning, the circuit court did not abuse its discretion in refusing

22

defendants' proposed instructions.

¶ 51    Defendants additionally argue that plaintiff was required to prove the individual defendants acted *both* for their own gain and contrary to the company's best interests, though they identify no specific proposed instruction of theirs that the court erroneously refused in this regard. The instruction given required plaintiff to prove that the individual defendants acted "solely out of self-interest," just as defendants' proposed instruction required plaintiff to prove that they acted "solely for their own personal gain." In both, use of the word "solely" adequately addresses the possibility that a corporate officer's actions taken in his own self-interest might also be in the best interests of the company. We similarly reject defendants' argument that the instructions given were confusing simply because the individual defendants were shareholders; just because they were shareholders does not mean, as defendants contend, that any action taken in their own self-interest was "necessarily" in the company's best interest. Finally, we agree with the circuit court that defendants' proposed instruction stating that corporate officers are entitled to put the company's interests over those who contract with the company was sufficiently incorporated into plaintiff's proposed instruction.[5]

¶ 52    Defendants additionally contend the circuit court improperly instructed the jury on causation. Although proximate cause was mentioned in connection with the instruction on punitive damages, defendants argue the court erred by failing to include it in the instruction for compensatory damages and in refusing defendants' proposed instruction that would have defined the term for the jury. Defendants' position is that a proximate cause instruction was necessary

---

[5]    Where defendants note only that "numerous other instructions" on the qualified privilege and business judgment rule were rejected, but fail to identify a specific error on the part of the circuit court, their argument is forfeited. See *Pecora v. Szabo*, 109 Ill. App. 3d 824, 825-26 (1982) (the appealing party may not put the burden of argument on the appellate court); *Chicago School Reform Board of Trustees v. Illinois Educational Labor Relations Board*, 315 Ill. App. 3d 522, 532 (2000) (conclusory assertions without supporting analysis are insufficient to preserve arguments for review).

because "there were many possible causes of [p]laintiff not being paid what he could have been paid under the Agreement." Plaintiff insists, however, that such an instruction was not necessary because "[t]here was no argument or evidence at trial suggesting any other 'cause' or that proximate cause was a disputed issue."

¶ 53    Although defendants insist that "many other possible causes of [plaintiff's damages [were] in evidence," including the company's revenue losses, the economy, plaintiff's inexperience, pending sexual harassment claims, the loss of employees, dissent over plaintiff's performance as CEO, and "the feeling that a change had to be made," they fail to cite any evidence in the record supporting this argument. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (argument must be supported by citation to the pages of the record relied on and points not argued are forfeited). Even if the issue is not forfeited, we cannot conclude that the circuit court abused its discretion in refusing defendants' proposed instructions. Unlike the wrongful death cases defendants cite, the evidence in this case presented no obvious contributing or concurring causes beyond the vague notion that the company *might* have terminated plaintiff's employment anyhow, for any number of reasons. See *Heitz v. Hogan*, 134 Ill. App. 3d 352, 356 (1985) (decedent was killed in the automobile accident that was the subject of the lawsuit, but the coroner's report stated his immediate cause of death was cardiac arrest); *Chambers v. Rush-Presbyterian-St. Luke's Medical Center*, 155 Ill. App. 3d 458, 467 (1987) (plaintiff's expert testified that both the coma alleged to have been caused by defendants' medical negligence and the decedent's preexisting cancer concurred to cause his death). The circuit court heard the evidence firsthand and concluded that it did not support giving defendants' proposed instructions. It is not our role to reweigh the evidence to determine whether a different result should have been reached.

¶ 54    Considered in their entirety, the instructions in this case fairly and fully informed the jury on causation. The jury was instructed that it was plaintiff's burden to prove that each element of damages claimed "occurred as a direct and natural result" of the individual defendants' tortious interference. Most of the "other possible causes" that defendants raise, moreover, are reasons the company might have had the legal right to terminate plaintiff's agreement for cause, an affirmative defense that the jury was instructed to consider ("Defendants have raised and have the burden to prove that Plaintiff['s] claim is barred because Plaintiff was terminated for cause *** If you find that Plaintiff was terminated for cause your verdict must be for Defendants.").

¶ 55    Accordingly, we hold the court did not abuse its discretion in refusing defendants' jury instructions.

¶ 56                         3. Manifest Weight of the Evidence

¶ 57    Providing no citations to the record, defendants argue the jury's verdict was against the manifest weight of the evidence and, specifically, that the evidence failed to support the jury's finding that the individual defendants acted solely for their own benefit or to harm plaintiff. Defendants insist that, at trial, the "undisputed evidence" established "that Dr. Packer, Ms. Sartain and Mr. Denniston acted in the interests of the Packer Companies in moving Plaintiff to a new position due to the serious problems existing at Packer Engineering that time."[6] Although defendants may have presented evidence tending to establish this, it was certainly not undisputed. Plaintiff presented evidence of his own tending to show that the individual defendants acted to cover up the investigation of financial improprieties and to punish plaintiff for exposing their wrongful conduct. We will not set aside a jury verdict unless, considered in the

[6]    For the first time on appeal, the individual defendants additionally claim that their reliance on the advice of counsel is "relevant to" the issue of whether they acted with the requisite intent. This argument is forfeited. These defendants did not assert reliance on the advice of counsel as an affirmative defense in their initial answer, nor does the record indicate that they sought leave to amend their pleadings at any time prior to judgment. See *Horwitz v. Bankers Life & Casualty Co.*, 319 Ill. App. 3d 390, 399 (2001) (citing 735 ILCS 5/2-616-(a) (West 1998)).

light most favorable to the appellee, it is contrary to the manifest weight of the evidence. *Niewold v. Fry*, 306 Ill. App. 3d 735, 747 (1999). "A jury's verdict is against the manifest weight of the evidence only where the opposite conclusion is clearly evident or when the verdict appears to be arbitrary or to be unsupported by the evidence." *Id.* Here, both sides marshaled significant evidence to support their respective versions of events over the course of a three-week trial. The jury's verdict was not arbitrary or unsupported by the evidence and we will not disturb it.

¶ 58                                    D. Compensatory Damages

¶ 59    For his tortious interference with contract claim against the individual defendants, the jury awarded plaintiff a total of $1,025,000 in compensatory damages, comprised of salary ($368,333), severance pay ($170,000), and the value of stock ($765,850), less plaintiff's earnings during the contract period (-$171,703) and the amount awarded to him under the breach of contract claim (-$100,000). Defendants claim these amounts were improper and must be reversed. They argue that (1) plaintiff's damages should have been limited to those available for breach of contract and not what plaintiff subjectively expected to receive under the contract; (2) (2) the award of salary for the remainder of the four-year term of the contract was improper where there was no acceleration clause; (3) plaintiff was entitled to stock, not to be paid the value of the stock; (4) plaintiff was not entitled to an additional year of severance pay; and (5) the damages awards against the individual defendants were "fatally inconsistent."

¶ 60    "[T]he amount of recoverable damages is a question of fact for the jury ***." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 252 (2006). We consider whether the jury's verdict in this regard was against the manifest weight of the evidence, *i.e.*, whether it was arbitrary, unreasonable, or not based upon any evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). "[T]he measure of damages upon which the jury's factual computation is based is a

question of law for the court \*\*\*." *Tri-G*, 222 Ill. 2d at 252. We review it *de novo*. *Magna Trust Co. v. Illinois Central R.R. Co.*, 313 Ill. App. 3d 375, 380 (2000) (issues which are purely legal in nature are subject to *de novo* review).

¶ 61                         1. Extent of Recoverable Damages

¶ 62    The circuit court instructed the jury that, in connection with his claim for breach of contract against the corporate defendants, plaintiff could only seek severance pay and related benefits provided for in the severance pay provision of the agreement. In connection with his claim for tortious interference against the individual defendants, however, the court instructed the jury that it could award plaintiff damages equal to what he would have received if the agreement had been fully performed. Defendants argue that, under either claim, plaintiff was only entitled to one year of severance pay and related benefits. They contend that, where plaintiff alleged the individual defendants harmed him by tortiously causing a breach of contract it "defies logic" that he could recover more from them than he could for the actual breach.

¶ 63    In making this argument, defendants overlook a key fact: they are not parties to the agreement. The corporate defendants are the ones that contracted with plaintiff and negotiated the terms of the employment agreement, including the provision governing severance pay, which acted to limit their financial exposure in the event that they elected to terminate plaintiff's employment. Contrary to defendants' arguments, it does not "defy logic" that a party to an agreement, and only a party to that agreement, may avail itself of a negotiated term of this sort. See *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill. App. 3d 631, 647 (1991) ("there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties") (emphasis in original and internal quotation marks omitted)). As discussed, *supra*, the individual defendants are neither parties to

the agreement nor intended third-party beneficiaries. With no right to enforce a provision of the agreement negotiated for the benefit of the parties, they remain, under well-established principles of tort law, responsible for "all damages which naturally flow from the commission of the tort." (Internal quotation marks omitted.) *Keiser-Long v. Owens*, 2015 IL App (4th) 140612, ¶ 37.

¶ 64    "[D]amages recoverable when a plaintiff proves intentional interference with contractual relations include pecuniary loss of the benefits of the contract; actual harm to reputation ***; and consequential losses for which the interference is the legal cause" (*Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 313 (1995) (citing Restatement (Second) of Torts § 774A(1) (1979))), less any damages separately paid by the breaching party (Restatement (Second) of Torts § 774A(2) (1979)). In this case, plaintiff sought only the first category of damages, the pecuniary loss of the benefits of the agreement. Defendants insist the circuit court ruled that plaintiff's damages in this regard were whatever he subjectively expected to receive from the agreement. We find no evidence of this in the record. In its ruling on the parties overlapping motions *in limine*, the court merely noted that "[i]t [wa]s possible that a jury could conclude that [plaintiff] [wa]s entitled to damages in excess of the severance amount as a result of the [i]ndividual [d]efendants' tortious conduct." At trial, the court first instructed the jury that plaintiff could recover damages equal to what he would have received if the agreement had been fully performed, and then specifically spelled out those categories of damages ("salary, benefits, severance and other compensation, including incentive compensation, and the value of The Packer Group, Inc. stock"). The fantastic hypothetical defendants present—that plaintiff could have testified that he expected to work as CEO of Packer Engineering until he was 95 years old and had earned $50 million—does not represent an outcome that was possible under the court's instructions. Pursuant to those instructions, plaintiff's expectations were only relevant insofar as

28

they were expressly stated in his employment agreement.

¶ 65    Finally, defendants contend the circuit court improperly rejected their proposed instruction informing the jury that plaintiff had the burden to prove damages with a reasonable degree of certainty and not based on speculation. We will only reverse a circuit court's decision regarding what instructions are warranted by the evidence if the court abused its discretion and its erroneous instructions "clearly misled the jury." *King*, 264 Ill. App. 3d at 143; *Leonardi*, 168 Ill. 2d at 100. Here, the benefits plaintiff could expect and which the circuit court directed the jury to consider were those unambiguously enumerated in the employment agreement. Where, under these circumstances, nothing in the record indicates there was a risk that the jury might improperly award speculative damages, the circuit court did not abuse its discretion in denying defendants' proposed instruction.

¶ 66                                          2. Salary

¶ 67    Defendants next argue that plaintiff was improperly awarded his salary for the remainder of the four-year term set forth in his employment agreement, or through December 2012, where that agreement contained no acceleration clause. Likening the employment agreement to an installment contract, they contend plaintiff was only entitled to recover the value of past-due installments.[7] Although defendants do not respond to plaintiff's contention that they forfeited this argument by failing to raise it in their post-trial motion, we find no forfeiture here, where defendants did argue in their post-trial motion that the salary award was improper. Parties are not required to limit their arguments on appeal to those made below, but simply to preserve issues or claims of error for appeal. *Brunton v. Kruger*, 2015 IL 117663, ¶ 76.

---

[7]    Defendants also note that plaintiff was required to mitigate his damages by seeking other employment. They do not argue, however, that he failed to do so. Indeed, the jury reduced plaintiff's damages by the amount of his earnings after his termination.

¶ 68     We nevertheless agree with plaintiff that the salary award was proper. Defendants cite *Coburn Group, LLC v. Whitecap Advisors, LLC*, No. 07 C 2448,  slip op. at 4-6 (N.D. Ill. Nov. 9, 2010), for the proposition that future damages are not recoverable absent an acceleration clause. By "future damages," however, the court in *Coburn* meant only those payments which, *at the time of trial*, had not yet become due. The plaintiff in that case sued the defendant for breach of contract and sought the present value of periodic commissions that would accrue after trial. The court noted that the plaintiff could indeed collect the commissions if he succeeded in proving the parties' agreement, but that he would simply have to wait for those debts to become due. *Coburn* is inapplicable here, where the trial took place over a year after the four-year term of employment in plaintiff's agreement had concluded. See also *Lewis v. Loyola University of Chicago*, 149 Ill. App. 3d 88, 95 (1986) (noting that recoverable damages are limited to those that have accrued up to the date of trial, because damages beyond that date are speculative and uncertain). Plaintiff did not seek future damages because, by the time of trial, all of the payments he claimed he was entitled to had accrued.

¶ 69     We are furthermore not convinced that plaintiff's employment agreement was an installment contract. "Whether a given contract is or is not severable cannot be determined by any precise rule; each case must depend in large part upon the specific terms of the contract involved." *Keeshin v. Levin*, 31 Ill. App. 3d 790, 798 (1975). Here, defendants direct us to no case where an employment agreement establishing an employee's annual salary was held to be an installment contract. Courts are hesitant to find an agreement is severable or divisible where one party's obligations are not readily apportioned with the other parties' periodic payments. See, *e.g.*, *Mineral Resources, Inc. v. Classic Coal Corp.*, 115 Ill. App. 3d 114, 120 (1983). We are not persuaded that the provision in the employment agreement at issue here, stating that plaintiff's

salary would be "reviewed annually on the same terms and intervals as other senior executives," makes the contract an installment agreement like the one for monthly rental payments at issue in *Blackhawk Hotel Associates v. Kaufman*, 85 Ill. 2d 59, 67-68 (1981).

¶ 70    Defendants alternatively argue that, regardless of any alleged breach of the employment agreement, plaintiff would have been terminated along with all other employees when the corporate defendants went out of business in January 2012, thus defeating his claim for any salary he might otherwise have been paid in 2012. Defendants claim the circuit court erred in refusing to admit evidence of the company's closing and the damages awarded by the jury for lost wages that would have been earned in 2012 are speculative. We review a circuit court's rulings regarding the admissibility of evidence for abuse of discretion. *Salcik v. Tassone*, 236 Ill. App. 3d 548, 551 & n.1 (1992).

¶ 71    Citing *Alimissis v. Nanos*, 171 Ill. App. 3d 1005 (1988), plaintiff argues that the circuit court's ruling was proper because damages are established at or near the time of the breach, making evidence of anything that happened afterward irrelevant. Although *Alimissis* involved the proper measure of damages for corporate stock (*id.* at 1010-11), we find it instructive where liability for the lost wages plaintiff seeks also arose at the time of breach. Defendants argue that the award of salary for 2012 has the effect of improperly treating plaintiff better than other employees of the company, who were unable to receive wages during that time period. A jury did not find, however, that prior to the company's closure, those other employees were wrongfully denied the benefit of an agreement establishing a four-year term of employment. Companies with existing debts and other obligations frequently go out of business and have remedies available to them, including bankruptcy, receivership, and dissolution proceedings. These subsequent events are relevant only to the defendants' ability to pay, and have no bearing

31

on whether proximate cause existed at the time of breach, when the individual defendants' liability for tortious interference arose. The circuit court's decision to preclude evidence of the company's eventual closing was therefore not "arbitrary, fanciful, or unreasonable" such that "no reasonable person would take the circuit court's view." *People v. Ursery*, 364 Ill. App. 3d 680, 686 (2006).

¶ 72    Accordingly, the jury's award of salary for the remainder of plaintiff's four-year term of employment was proper.

¶ 73                                3. Stock Value

¶ 74    As part of the compensation set out in his employment agreement, plaintiff was entitled to receive 5% of authorized voting stock, to be earned/vested over the course of four years, according to the following schedule: 10% after the first year, 30% after the second year, 60% after the third year, and 100% after the full four-year term of employment. Defendants contend the jury's award of $765,850 for shares of The Packer Group stock was improper because, under the employment agreement, plaintiff was only entitled to receive stock, not the value of stock. Defendants argue that specific performance was the proper remedy where a company, like The Packer Group, was closely held and not publicly traded, such that its stock had no real market value. Plaintiff argues, however, that, in order to prevent defendants from improperly benefiting from circumstances occurring after their wrongful conduct, the law provides that the proper measure of damages for corporate stock is its market value at a time reasonably close to the date of breach.

¶ 75    "Illinois courts have consistently held that money damages are the appropriate remedy for breach of contract." *Lake in the Hills Aviation Group, Inc. v. Village of Lake in the Hills*, 298 Ill. App. 3d 175, 185 (1998). "Specific performance is an equitable remedy in contrast to a remedy

at law, which is the payment of money as a substitute for performance." *Butler v. Kent*, 275 Ill. App. 3d 217, 226 (1995). The remedy is not available as of right but "rests within the sound discretion of the trial court, based on all of the facts and circumstances in evidence." Although money damages are the default, "[s]pecific performance *can be available* for causes of action involving agreements on the sale or transfer of shares of stock where the shares are not available on the open market." (Emphasis added.) *Id.* at 227. A party seeking specific performance must support its argument with "clear, explicit and convincing evidence." *Id.* Defendants do not indicate anywhere in the record where they specifically asked the court to limit plaintiff to the remedy of specific performance, and we are aware of no case where a court so limited a plaintiff's ability to seek money damages for stock, even difficult to value stock, in a breach of contract or tortious interference with contract case. The cases defendants cite are distinguishable for this very reason; they involve *plaintiffs* who requested specific performance in lieu of money damages. Although specific performance was "available" to plaintiff under these circumstances, defendants had no right to dictate the remedy plaintiff could pursue or to prevent plaintiff from attempting to place a value on the shares of the closely held company. The circuit court therefore did not abuse its discretion in admitting evidence regarding the value of the stock, including the company's audited financial statements and Dr. Packer' surrender of his own stock in April 2010, both establishing the stock's value at $28.90 per share.

¶ 76    Defendants' argument that the circuit court improperly refused to permit Mr. Brad Van Horn, the individual who initially established this value, from testifying is forfeited where defendants failed to make a sufficiently detailed offer of proof for the record. Defendants' generic summary of what Mr. Van Horn would have testified to is insufficient information upon which to base our review. *People v. Andrews*, 146 Ill. 2d 413, 421-22 (1992). The jury heard

evidence from which it could establish a monetary value for the stock at issue here, and it is not our role to reweigh that evidence. The jury's award of damages in this regard was not "unreasonable, arbitrary and not based upon any of the evidence" and we will not disturb it. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992).

¶ 77                                    4. Severance Pay

¶ 78    Defendants also take issue with the jury's award of severance pay and related benefits in addition to its award of salary and stock. They argue that the award contradicts the circuit court's ruling that the severance pay provision in plaintiff's employment agreement applied *only* during the initial four-year term of employment. Defendants misread the court's order, which states merely that "the severance pay provision plainly applies to a termination during the four-year term of the contract." The court also stated that, for his tortious interference claim, the jury could award plaintiff "damages *in excess of* the severance amount" (emphasis added), not *instead* of the severance amount.

¶ 79                                    5. Inconsistent Awards

¶ 80    Defendants next contend that the differing compensatory damage amounts awarded against the individual defendants—$720,000 against Dr. Packer and $205,000 against Ms. Sartain[8]—are "fatally inconsistent and cannot stand." They direct us to no authority, however, requiring the compensatory damages assessed against each defendant to be the same. Citing the Mississippi case *Baker & McKenzie, LLP v. Evans*, 2011-CA-00110-SCT, ¶ 127 (Miss. 2013), defendants contend that a claim for tortious interference with contract is not a claim involving "fault," and is therefore not subject to apportionment. The court in *Baker*, however, merely held that a defendant was not entitled to a jury instruction on the affirmative defense of apportionment of fault where he failed to articulate a defined duty owed to the plaintiff by the individual he

---

[8]    The jury also awarded $100,000 against Mr. Deniston.

sought the instruction against and where the evidence in any case did not support such an instruction. *Id.* at 128. In its analysis of this issue, the court never mentioned tortious interference with contract, which was but one of several claims against the defendant in question. *Id.* We fail to see how *Baker* in any way establishes the point of law it is cited for or what bearing it has on an award of damages under Illinois law.

¶ 81     Defendants also cite *Wottowa Insurance Agency, Inc. v. Bock*, 104 Ill. 2d 311 (1984) for their proposition that "[a]n inconsistent award of damages justifies a verdict being set aside and a new trial." *Wottowa*, however, did not involve differing compensatory damage amounts but, rather, findings of fact by the jury that were completely at odds with each other. In that case, the plaintiff alleged he had provided insurance coverage and credit extensions to two related corporations; in count I he alleged that corporate officers failed to honor a guarantee agreement making them personally liable for the obligations and in count II he alleged the officers fraudulently inducing him to extend further credit to the corporations. *Id.* at 312-13. The jury found the guarantee agreement was a corporate obligation, not a personal one, but nevertheless awarded the plaintiff the damages he sought under count II. *Id.* at 313, 316. The appellate court affirmed the judgment in part but our supreme court reversed and remanded for a new trial, reasoning that, once the jury found the guarantee agreement was not a personal obligation, the claim that the officers committed fraud by signing it with no intention of honoring it personally necessarily failed; the jury's findings were irreconcilable and its verdicts legally inconsistent. *Id.* In this case, the jury made no irreconcilable findings of this nature, but simply found the individual defendants liable for different amounts. The jury's verdicts were not inconsistent.

¶ 82     According to defendants, there is no explanation for the differing damages awards where the theory of liability, damages sought, and jury instructions were the same for both of the

individual defendants. What they fail to acknowledge is that the evidence at trial did establish that the two defendants engaged in different conduct and played different roles in the series of events leading to plaintiff's termination from Packer Engineering. The jury heard testimony, for example, that the financial irregularities plaintiff uncovered related to Dr. Packer's privately owned business, New Vermillion; that Dr. Packer was the one who forbade plaintiff from reviewing corporate financial information; that Dr. Packer exhibited hostile behavior toward plaintiff; that Dr. Packer was the one who first proposed the idea of terminating plaintiff; and that he formed the CEOC, an executive council to run the company that plaintiff was excluded from and which demoted him and ultimately terminated his employment. Testimony was also presented from which the jury could conclude that Ms. Sartain played a somewhat less significant role and acted primarily to carry out her long-time boss's orders. Under these circumstances, we cannot conclude that the jury's differing damages awards were arbitrary, unreasonable, or not based upon any evidence. *Maple*, 151 Ill. 2d at 454.

¶ 83                              E. Punitive Damages

¶ 84    Finally, defendants argue the jury's award of punitive damages against the individual defendants should be vacated because there was insufficient evidence to submit the issue to the jury, the award resulted in a double punishment for the same conduct, and the amount of the award was excessive, both constitutionally and in light of Illinois common law criteria. Plaintiff contends the issue of punitive damages was properly submitted to the jury and the jury's award is supported by the evidence adduced at trial.

¶ 85                              1. Standards of Review

¶ 86    We first address the parties' disagreements regarding the applicable standards of review. Citing *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1138 (2004), plaintiff insists

that "the trial court's decision to submit the issue of punitive damages to the jury is reviewed for abuse of discretion." Although we commend the court in *Franz* for its in-depth analysis of the standard applicable to a review of the *amount* of a jury's punitive damages award, we decline to follow it on this particular point where we find it contradicts controlling supreme court precedent. In *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978), our supreme court unambiguously held that "the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." We note that the court in *Franz* relied for this point on *Proctor v. Davis*, 291 Ill. App. 3d 265, 287 (1997) and *LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1072 (2001), cases that in turn both relied on *Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 378-79 (1994). *Levy* involved punitive damages awarded by the circuit court at the conclusion of a bench trial, however, and stood for a very different proposition. *Levy*, 268 Ill. App. 3d at 378 ("[w]hether *to award* punitive damages is an issue for the sound discretion of the trial court, and its decision will not be set aside absent an abuse of discretion" (emphasis added and internal quotation marks omitted)). We therefore agree with defendants that our review of the circuit court's preliminary decision to submit the issue of punitive damages to the jury is *de novo*.

¶ 87     We agree with the parties that, for challenges to an assessment of punitive damages made under Illinois common law criteria, the jury "will not be reversed unless the manifest weight of the evidence shows that the assessment was so excessive as to demonstrate passion, partiality, or corruption on the part of the decision-maker." *Franz*, 352 Ill. App. 3d at 1145. Plaintiff erroneously contends that this standard applies equally to constitutional challenges. Defendants are correct, however, that the separate constitutional question of whether a punitive damages award is excessive in violation of due process is reviewed *de novo*. *International Union of*

*Operating Engineers, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456, 468-69 (2006). With these standards in mind, we review the propriety of the punitive damages award in this case.

¶ 88                                    2. Submission of the Issue to the Jury

¶ 89    "Punitive, or exemplary, damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 414 (1990). Due to their penal nature, "courts must take caution to see that punitive damages are not improperly or unwisely awarded." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 188 (1978). Punitive damages are proper where a defendant's conduct "evinces a high degree of moral culpability, that is, when the tort is committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." (Internal quotation marks omitted.) *Slovinski v. Elliott*, 237 Ill. 2d 51, 58 (2010).

¶ 90    The circuit court did not err in submitting the issue of punitive damages to the jury in this case. As the court noted in its order denying the individual defendants' motions for summary judgment, plaintiff had "submitted evidence that the [i]ndividual [d]efendants conspired to terminate his employment as a result of his intention to reveal financial irregularities and other potentially unscrupulous business practices committed by them," that these defendants "operated in bad faith, to protect their own interests and to harm [plaintiff]," and that "their actions were adverse to the company's interests." The conduct described in the Seventh Circuit cases cited by defendants is factually distinguishable. See *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 276 (7th Cir. 1996) (finding "little more than simple deceit and obfuscation" by sophisticated advocates operating within a competitive marketplace); *Europlast, Ltd. v. Oak Switch Systems,*

*Inc.*, 10 F.3d 1266, 1276-77 (7th Cir. 1993) (finding "little if any evidence of 'gross,' 'wanton' or 'malicious' conduct" on the part of a manufacturer sued by its supplier for terminating the parties' contract). The circuit court did not err by submitting the issue to the jury where plaintiff had established a prima *facie case* for punitive damages.

¶ 91                                    3. Double Punishment

¶ 92    Arguing that "[p]unitive damages should not be allowed where the same conduct provides the basis for compensatory damages," the individual defendants next contend that they were erroneously subjected to double punishment for the same conduct. In the cases they cite, however, the same outrageous conduct justifying the imposition of punitive damages also constituted an element of the cause of action. See *Eckenrode v. Life of America Insurance Co.*, 470 F.2d 1, 3 (7th Cir. 1972) (punitive damages not warranted where outrageous conduct was an element of the underlying claim for intentional infliction of emotional distress); *Knierim v. Izzo*, 22 Ill. 2d 73, 88 (1961) (same; "Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive.").

¶ 93    Where an award of punitive damages is based on misconduct going above and beyond that required to establish the underlying tort, this problem does not arise. *Cress*, 341 Ill. App. 3d at 182. Such is the case here, where the wrongful conduct that plaintiff must establish to recover on a claim for tortious interference with contract—the "intentional and unjustified inducement of a breach of the contract" (internal quotation marks omitted) (*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989))—does not rise to the level of, and is not coextensive with, the outrageous conduct evincing a "high degree of moral culpability" that is required for an award of punitive damages (*Slovinski*, 237 Ill. 2d at 58). *Cf. E.J. McKernan Co. v. Gregory*, 252 Ill. App. 3d 514, 532, 534-35 (1993) (affirming punitive damages award based

on "willful and wanton conduct" exceeding the "intentional and unjustified interference" required to establish a claim for tortious interference with a business expectancy (internal quotation marks omitted)). The award of punitive damages in this case therefore did not improperly subject the individual defendants to double punishment for the same conduct.[9]

¶ 94                                        4. Constitutionality of the Award

¶ 95    Defendants next argue the jury's award of punitive damages should be vacated because it is unconstitutionally excessive in violation of the due process clause of the fourteenth amendment (U.S. Const., amend. XIV). The Supreme Court has established three "guideposts" for courts considering this issue: "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 409 (2003).

¶ 96    To assess the reprehensibility of a defendant's conduct, we consider the following factors: (1) whether "the harm caused was physical rather than economic"; (2) whether "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others"; (3) whether "the target of the conduct had financial vulnerability"; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* at 419. "The existence of any one of

---

[9]    Nor can *dicta* in *Ampat/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1044 (7th Cir. 1990)—where the Seventh Circuit speculated that the trial court may have vacated an award of punitive damages in an attempt to do rough justice where liability was uncertain—be construed to stand for the proposition that punitive damages are improper in cases where a plaintiff receives a "generous award of compensatory damages." Regardless of the size of an award for compensatory damages, punitive damages are appropriately awarded where "the character of the conduct is of the sort that calls for deterrence and punishment over and above that provided by a compensatory award." (Internal quotation marks omitted.) *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 182 (2003).

these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id.*

¶ 97    Because the individual defendants' conduct caused no physical harm and did not endanger the health or safety of others, the first two factors are not applicable. With respect to the third, although plaintiff notes that he was raising a family with five children and purportedly sacrificed a fully vested pension with his former employer to take the position at Packer Engineering, defendants point out that he still had a partially vested pension, his wife was employed as a physician, and he was able to secure six-figure employment upon leaving the company. We do not conclude that plaintiff was financially vulnerable under these circumstances.

¶ 98    The last two factors, however, do weigh in plaintiff's favor. Plaintiff presented evidence at trial that the individual defendants' actions were not accidental, but that they intentionally acted to protect themselves at the expense of plaintiff and the company, to suppress the investigation into their alleged wrongdoing, and to punish plaintiff for his role in disclosing information that initiated that investigation. The tortious interference with his employment agreement that plaintiff complained of was not the result of an isolated action by these defendants, but rather a course of conduct that was ongoing for some time before plaintiff's demotion and eventual termination. A finding of reprehensibility does not require that all five factors be met, but can rest, as here, on the existence of only two of the five factors. *Tully v. McLean*, 409 Ill. App. 3d 659, 676 (2011) (citing *Lowe Excavating Co.,* 225 Ill. 2d at 483). The evidence presented at trial demonstrated that the individual defendants' conduct was sufficiently reprehensible to justify an award of punitive damages.

¶ 99    Consideration of the second constitutional guidepost, "the disparity between the actual or

potential harm suffered by the plaintiff and the punitive damages award" (*State Farm*, 538 U.S. at 409), calls on us to consider the ratio between compensatory and punitive damages, keeping in mind the Supreme Court's admonishment that "few awards exceeding a single-digit ratio *** will satisfy due process." *State Farm*, 538 U.S. at 425. Defendants argue that, because plaintiff's damages for tortious interference with contract should have been limited to his damages for breach of contract (which were $100,000) the proper ratio is approximately 14:1. Because, as discussed *supra*, we reject this argument, we consider the ratio between the compensatory and punitive damages actually awarded by the jury. Against Dr. Packer, the jury awarded compensatory damages of $720,000 and punitive damages of $1.2 million, resulting in a ratio of 1.7:1. Against Ms. Sartain, the jury awarded punitive damages of $150,000, an amount that is *less* than the $205,000 in compensatory damages it awarded against her, resulting in an inverse ratio of 1:1.4. In each case, the amount of punitive damages is well within the range found constitutionally acceptable by courts. See, *e.g.*, *Tully*, 409 Ill. App. 3d at 679 (affirming punitive damages for breach of fiduciary duty that were within a 3:1 ration of compensatory damages).

¶ 100   With respect to the third and final constitutional guidepost, "the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases" (*State Farm*, 538 U.S. at 409), the parties agree that there is no law that imposes a civil penalty, such as a fine, for tortious interference with contract. Defendants nevertheless urge us to find that this factor weighs in favor of unconstitutionality by considering a handful of awards made by juries and courts in other wrongful termination or tortious interference cases. We decline to do so. The purpose of this guidepost is to "accord substantial deference to *legislative judgments* concerning appropriate sanctions for the conduct at issue." (Emphasis added and internal quotation marks omitted.) *BMW of North America, Inc. v. Gore*,

517 U.S. 559, 583 (1996). Where the legislature has not spoken, there is nothing to consider. *Lowe Excavating*, 225 Ill. 2d at 489.

¶ 101 We conclude that the award of punitive damages assessed against the individual defendants was not unconstitutional. Plaintiff presented evidence at trial demonstrating that the conduct of these defendants was sufficiently reprehensible, the amount awarded by the jury is within an appropriate ratio of the compensatory damages awarded, and the legislature imposes no civil penalty for similar conduct that we must take into consideration.

¶ 102         5. Appropriateness of the Award Pursuant to Common Law Criteria

¶ 103 Defendants separately argue that the punitive damages award in this case is improper pursuant to Illinois common law considerations, which include "the nature and enormity of the wrong, the financial status of the defendant, and the potential liability of the defendant." (Internal quotation marks omitted.) *E.J. McKernan Co.*, 252 Ill. App. 3d at 536. With respect to the first consideration, the parties each do little more than recite the element and conclude that it weighs in their favor. As noted above, however, plaintiff presented extensive evidence at trial regarding the nature of the individual defendants' conduct. The jury considered this evidence and, according to the signed verdict forms, found "the conduct was intentional, and that justice and the public good require[d] additional damages to punish [the individual defendants] and to discourage [them] and others from similar conduct." Defendants contend, and plaintiff does not dispute, that the last consideration, the potential liability of the defendant, is a factor generally considered in products liability actions that is not relevant to this case, where there are no other claims at issue.

¶ 104 The individual defendants argue, however, that the second consideration would have weighed against an assessment of punitive damages if the circuit court had not refused to allow

them to present evidence of their financial status to the jury.[10] Plaintiff argues that there is no requirement that such evidence be allowed before punitive damages can be we awarded and, alternatively, that defendants forfeited this issue by failing to make an offer of proof regarding what the proposed evidence would have shown.

¶ 105    Plaintiff cites *Ford v. Herman*, 316 Ill. App. 3d 726, 734 (2000) for the proposition that "the absence of financial status evidence does not mandate that the punitive damages award be overturned." In that case, however, neither party sought to introduce such evidence. *Id. Ford* stands only for the proposition that, where "[f]inancial status is but one factor for the jury to consider" (*id.*), the *plaintiff*'s failure to present such evidence does not automatically result in a punitive damages award being overturned. It does not stand for the proposition that such an award may stand when the defendant sought to introduce such evidence and was barred from doing so. In fact, the court admonished the defendant in that case that this is precisely what he should have done. See *id.* at 734-35 ("the defendant bears the burden of putting on that evidence. *** If [he] knew he would have financial difficulties in paying a punitive damages award, then he should have so informed the jury."). Plaintiff also attempts to distinguish *Powers*, a case cited by defendants, on the basis that the court in that case was not asked to determine whether evidence of the defendant's financial status was admissible at trial, but only whether it was discoverable. *Powers v. Rosine*, 2011 IL App (3d) 100070, ¶ 13. The court noted, however, that the financial status of a defendant is important when considering an award of punitive damages because "an amount sufficient to deter one individual may be trivial to another" and "the intent of

---

[10]    We decline to consider defendants' additional argument, raised for the first time in their reply brief, that the circuit court not only erroneously barred this evidence but improperly instructed the jury. See *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507 (1997) (issues raised for the first time in a reply brief are forfeited); Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (points not argued in appellant's brief are forfeited); Ill. S. Ct. R. 341(j) (eff. Feb. 6, 2013) (reply brief "confined strictly" to responding to the arguments presented in the appellee's brief).

a punitive damage award is to punish the wrongdoer and deter that person, and others, from committing similar acts in the future." *Id.* ¶¶ 11, 13. To accomplish these purposes, the court concluded that "information regarding [the defendant]'s financial status *would need to be admitted*." (Emphasis added.) *Id.* ¶ 13.

¶ 106   We review a circuit court's rulings regarding the admissibility of evidence for abuse of discretion. *Salcik v. Tassone*, 236 Ill. App. 3d 548, 551 & n.1 (1992). Evidence of the individual defendants' financial status was certainly relevant to an award of punitive damages in this case. Relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011). In making its ruling on this issue, the circuit court stated that it did not believe the particular circumstances of this case, including the amount of compensatory damages sought by plaintiff, justified "interject[ing] an issue that could be rather lengthy and involved," particularly where the court noted that "[a]s far as proportionality, the Court [would] *** entertain an adjustment of that post-trial if necessary." Given the potential undue delay and confusion that may have resulted from a lengthy digression into the financial status of the individual defendants, we cannot conclude that the circuit court abused its discretion in refusing to admit this otherwise relevant evidence.

¶ 107 Moreover, even if the evidence was erroneously excluded, where the individual defendants failed to make an offer of proof on this issue, we have no basis for concluding that the award of punitive damages is so disproportionate to their net worth that it must be vacated. *Cf. Fopay v. Noveroske*, 31 Ill. App. 3d 182, 201 (1975) (holding evidence of net earnings, as opposed to net worth, were erroneously admitted but concluding the error was harmless where

the reviewing court could itself compare the award of punitive damages to the properly shown net worth); see also *Powers v. Rosine*, 2011 IL App (3d) 100070, ¶ 14 ("evidence of the defendant's financial status is necessary for an appellate court to properly review a challenge to an award of punitive damages under the Illinois common law").

¶ 108 Defendants cite *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002) for their proposition that "no offer of proof is required where it is apparent that the trial court understood the nature and character of the evidence sought to be introduced." An offer of proof, however, serves two distinct functions: "to disclose to the trial judge and opposing counsel the nature of the offered evidence, enabling them to take appropriate action," *and* "to provide the reviewing court with a record to determine whether exclusion of the evidence was erroneous and harmful." *People v. Thompkins*, 181 Ill. 2d 1, 10 (1998). *Dillon* is furthermore distinguishable, in that the excluded evidence in that case was testimony barred because it was cumulative of that provided by another witness. 199 Ill. 2d at 495-96. Having heard the previous witness testify, the circuit court readily understood the nature of the evidence. Here, defendants claim they "let the trial court know what the evidence would show on this issue," but no specifics were discussed on the record. This was insufficient. An offer of proof must show with particularity the substance of the evidence; a conclusory summary of a witness's anticipated testimony is inadequate. *Andrews*, 146 Ill. 2d at 421-22. Although defendants now argue that, if given the chance, they would have rebutted the inference that they benefited from the financial improprieties they were accused of and would have instead demonstrated for the jury their "bleak financial condition," we cannot simply take them at their word. With no offer of proof in the circuit court, we are unable to assess what effect, if any, the barred testimony might have had on the jury's award of punitive damages.

¶ 109 Having reviewed the relevant common law criteria, we cannot say that the jury's assessment of punitive damages in this case was excessive as a "result of passion, partiality, or corruption." We therefore will not disturb it.

¶ 110                                     F. Plaintiff's Cross Appeal

¶ 111 On cross-appeal, plaintiff raises several challenges to the circuit court's damages award, claiming the court erred when it limited his breach of contract damages to one year of severance pay, reduced his recovery for lost wages by the amount of his actual earnings after he was terminated, and awarded him only $1,500 of the $38,684.30 in costs he sought as a prevailing party.

¶ 112                                     1. Forfeiture

¶ 113 Defendants argue that plaintiff failed to preserve these issues for appeal by not filing a post-trial motion. In response, plaintiff argues that because the issues he raises on cross appeal relate to the award of damages, and because defendants also dispute certain aspects of the damages award, his claims of error should be deemed properly preserved. We decline to consider this proposition where plaintiff cites no supporting authority and where we ourselves are aware of none. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (noting argument must be accompanied by citation to relevant authorities and providing that points not argued on appeal are waived).

¶ 114 Plaintiff also contends that "[b]ecause these issues were repeatedly raised before the trial court, they should be deemed preserved for purposes of this appeal," noting that he raised at least one of the issues in his motions *in limine*, at oral argument, and in an emergency motion to reconsider the court's ruling on the motions *in limine*, to the point that the circuit court stated that it had "heard enough." This argument is unavailing. We initially note that a scheduling conflict in this case meant that a different judge presided over the trial from the one who ruled on the

parties' motions *in limine*. Any indication the former judge gave that he was not inclined to change his rulings is therefore irrelevant. Even if the same judge presided throughout, such statements cannot excuse a party from complying with the statutory requirement. See *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶ 38 (holding an issue not raised in a post-trial motion was not preserved for appeal, despite the fact that, during the trial, the circuit court had warned the plaintiff that if he raised the issue again, it would declare a mistrial). It is well established that the "failure to file a post-trial motion following [a] jury trial amount[s] to a failure to preserve any matters for review." *Barry Mogul & Associates, Inc. v. Terrestris Development Co.*, 267 Ill. App. 3d 742, 755 (1994). This is equally true for issues raised by cross-appellants. See, *e.g.*, *id.* The rule exists, in part, because "it allows the decision maker who is most familiar with the events of the trial, the trial judge, to review his decisions without the pressure of an ongoing trial and to grant a new trial if, on reconsideration, he concludes that his earlier decision was incorrect." *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 349 (1980). By requiring litigants to state specific grounds in support of their claims of error, it also crystallizes the issues for the trial judge and allows the reviewing court to readily ascertain whether the trial court was afforded an adequate opportunity to reassess any allegedly erroneous rulings. *Garcia v. Seneca Nursing Home*, 2011 IL App (1st) 103085, ¶ 25 (quoting *Brown*, 83 Ill. 2d at 349-50). Plaintiff has advanced no convincing basis for his exclusion from the requirement in this case. Accordingly, we find plaintiff has forfeited review of the claims of error he raises in his cross appeal.

¶ 115   Because the forfeiture rule is an admonition to the parties and not a limitation on the court, however, we may overlook it "in the interest of developing a sound body of law [citation], and may review any issue so long as the record contains facts sufficient for its resolution [citation]." *In re J.R.*, 342 Ill. App. 3d 310, 317-18 (2003). We do so here.

¶ 116                    2. Damages for Breach of Contract

¶ 117    Plaintiff initially argues the circuit court erred in limiting his breach of contract damages to one year of severance pay. According to plaintiff, the employment agreement provided him with a guaranteed term of four years of employment as CEO of Packer Engineering, at the conclusion of which he would become an "at-will" employee subject to termination without cause. Plaintiff contends that, because defendants had no right to terminate him without cause before during the four-year term, he is entitled to what he would have earned under the agreement for the remainder of that term, plus one year of severance pay for his termination without cause. Defendants insist the severance clause applies during the four-year term of employment to limit damages for breach of contract during that initial term.

¶ 118    Although "the amount of recoverable damages is a question of fact for the jury, the measure of damages upon which the jury's factual computation is based is a question of law for the court." *Tri-G*, 222 Ill. 2d at 252. Where, as here, the circuit court determined the construction of a contract as a matter of law, our review is *de novo*. *Wiczer v. Wojciak*, 2015 IL App (1st) 123753, ¶ 33. We construe the agreement as a whole, mindful that "meaning and effect must be given to every part[,] *** including all its terms and provisions, so no part is rendered meaningless or surplusage unless absolutely necessary." *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 159 (1999).

¶ 119    We are of the view that, taken together, the relevant provisions of plaintiff's employment agreement unambiguously establish that the severance pay provision applies both during and after the initial four-year term of employment. In Illinois, the default employment relationship is "at-will" employment. An at-will employee is "a noncontracted employee *** who serves at the employer's will." *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994). An employer

may discharge such an employee for any reason or for no reason at all, with or without notice. *Id.* "[P]arties may alter the at-will nature of the[ir] relationship, however, by providing for a fixed duration of employment." *Krum v. Chicago National League Ball Club, Inc., 365 Ill. Ap*p. 3d 785, 788 (2006). We agree with plaintiff that the employment agreement in this case created a fixed-term contract. Plaintiff was n*ot* an "at will" employee during the first four years of his employment, and, contrary to defendants' reading, could therefore on*ly be terminated for cause during this period.* In an attempt to distinguish *Berutti v. Dierks Foods, Inc.*, 145 Ill. App. 3d 931 (1986), a case cited by plaintiff on this point, defendants point out that the word "guarantee" was never used by the parties in this case. In *Berutti*, unlike here, the parties' employment agreement contained no fixed term, but merely stated that the plaintiff would be pa*id a " '[g]uaranteed salary f*or twelve months of $750.00 per week.' " *Id.* at 933. Affirming summary judgment in the employee's favor, the appellate court held that this language did not merely st*ate a r*ate of pay, but was sufficient to establish a fixed term of employment. *Id.* at 936. *Berutti* merely stands for the proposition that a promise of a guaranteed salary can be enough to imply a fix*ed* term where one is not otherwise specified. It does not hold that the word "guarantee" is required to remove an arrangement from the realm of at-will employment where a term *is* clearly specified. Indeed*, "n*o set fo*rm of w*ords or course of conduct is required to make [an] employment at will or for a specific period of time." (Internal quotation marks omitted.) *Stein v. Isse Koch & Co.*, 350 Ill. App. 171, 175 (1953).

¶ 120 The severance pay provision provided one year of salary and benefits, plus targ*ete*d incentive compensation, if plaintiff's employment was terminated without cause, as a result of constructive cause, or due to a change in control of the company. Although plaintiff cou*ld only be terminated wi*thout cause after the initial four-year term, he could still be terminated for

constructive cause or as a result of a change in control within his first four years as CEO. There is thus no conflict in reading the severance pay provision to apply to a termination at any time and there is no language anywhere in the agreement limiting the provision to either the initial four-year term (as defendants suggest) or to the period of time following that term (as plaintiff contends on cross-appeal).

¶ 121   The circuit court concluded that "the only reasonable construction" of plaintiff's employment agreement was that "the severance pay provision plainly applie[d] to a termination during the four-year term of the agreement." We agree. As discussed, *supra*, this provision served to limit the exposure of the corporate defendants, who were parties to the agreement and negotiated its terms with plaintiff, in the event that they terminated plaintiff without cause. It did not, however, limit the exposure of the individual defendants, who were not parties to the agreement and remained liable for all damages flowing from their tortious conduct. The circuit did not err in limiting plaintiff's breach of contract damages to severance pay but permitting the jury to award plaintiff the other benefits he would have received if the agreement had been performed in connection with his tortious interference claim against the individual defendants.

¶ 122                3. Evidence of Plaintiff's Post-Termination Earnings

¶ 123   Plaintiff next argues the circuit court erred when it denied his motion *in limine* to exclude tax returns and other evidence of income he received after his termination from Packer Engineering. In his motion, he argued that evidence of his post-termination earnings was not relevant where he had a contractual right to a fixed salary for four years, plus severance and other benefits. The circuit court disagreed, ruling that plaintiff's recovery of lost wages was "limited to the differential between his actual earnings and the earnings he would have had except for his employer's tortious conduct."

¶ 124   As part of its inherent power to admit or exclude evidence, a circuit court has broad discretion to grant or deny motions *in limine*. *DiCosola v. Bowman*, 342 Ill. App. 3d 530, 535 (2003). Unless the court's exercise of that discretion relied on an erroneous conclusion of law, we will not disturb its rulings absent a clear abuse of discretion. *Beehn v. Eppard*, 321 Ill. App. 3d 677, 680-81 (2001). "An abuse of discretion will be found only where the circuit court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the circuit court's view." *People v. Ursery*, 364 Ill. App. 3d 680, 686 (2006).

¶ 125   Plaintiff argues that, under the collateral source rule, his post-termination earnings were not relevant because they represented benefits realized from an independent source. Plaintiff admits that application of the collateral source rule can result in an injured party receiving a windfall, but argues that this result is preferred over relieving a wrongdoer of full responsibility for its actions. In response, defendants contend the collateral source rule has no application here. They argue evidence of post-termination earnings were relevant where plaintiff had a duty to mitigate his damages by seeking similar employment and where his damages were properly reduced by those sums that he earned or could have earned through such employment.

¶ 126   It is well established that damages for lost wages are "the amount normally received without discharge less the amount earned or that reasonably could have been earned in mitigation." *Harden v. Playboy Enterprises, Inc.*, 261 Ill. App. 3d 443, 453 (1993). "The purpose of damages is to put the nonbreaching party into the position he or she would have been in had the contract been performed, but, not in a better position." *Id.* at 454. The collateral source rule is typically asserted by personal injury plaintiffs whose insurance has paid for some or all of the medical services necessitated by a defendant's tort. *Arthur v. Catour*, 216 Ill. 2d 72, 80 (2005). Pursuant to that rule, "benefits received by the injured party from a source wholly independent

of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." (Internal quotation marks omitted.) *Id.* at 78.

¶ 127   The single case plaintiff cites for the proposition that the collateral source rule applies in wrongful termination cases supports the opposite conclusion. In *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986), a case in which a sheriff's deputy brought a civil rights action against his employer, the Seventh Circuit refused to reduce the plaintiff's damages award by the amount of unemployment compensation benefits he received, reasoning that the defendant should not benefit simply because the state provides a means of helping those who are out of work. With respect to money the plaintiff *earned* while unemployed, however, the court noted that "[t]he jury could have considered such evidence," because, although they chose not to avail themselves of it, the defendants "had the opportunity to argue the mitigation evidence to the jury and offer an instruction regarding mitigation of earnings." *Id.* Plaintiff's attempt to distinguish *Schwarze v. Solo Cup Co.*, 112 Ill. App. 3d 632 (1983), a case cited by defendants, is furthermore unconvincing. Although the employment agreement in that case expressly provided that the employee would be paid damages equivalent to the difference between his prior salary and any new salary, the court noted that the "provision [wa]s essentially an express incorporation of the common law rule" regarding mitigation of damages. *Id.* at 638.

¶ 128   Accordingly, we are unconvinced that the collateral source rule, generally applied in personal injury cases, is applicable to plaintiff's claims in a wrongful termination case. The circuit court did not rely on an erroneous conclusion of law in deciding plaintiff's motion *in limine* to exclude evidence of his post-termination earnings, and did not abuse its discretion in denying that motion.

¶ 129                                4. Recovery of Costs

¶ 130 Plaintiff finally contends the circuit court erred in awarding him only $1,500 of the $38,684.30 in costs he sought to recover as a prevailing party. The record contains no transcript of any argument held on plaintiff's petition for costs, the circuit court issued a single-page written order that does not provide its reasoning, and there is no indication that plaintiff sought clarification of that order. We review the circuit court's judgment awarding costs for an absent abuse of discretion. *Boehm v. Ramey*, 329 Ill. App. 3d 357, 366 (2002). Although it is true that, on this record, we cannot discern precisely which of plaintiff's itemized costs the circuit court awarded, defendants argue, and we agree, that the bulk of the costs plaintiff sought are not recoverable.

¶ 131 Section 5-108 of the Code of Civil Procedure provides for an award of costs to a prevailing plaintiff in a civil case. 735 ILCS 5/5-108 (West 2012). Section 5-108 does not define "costs" or describe categories of costs available, leaving the definition for courts to determine. *Boehm*, 329 Ill. App. 3d at 366. Plaintiff relies on the broad definition of "costs" set forth in *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 165-66 (1982). In *Vincencio v. Lincoln-Way Builders, Inc.*, however, our supreme court explained that "[n]either the plain and ordinary meaning of the word, nor [the court's] description in *Galowich*, provide a working definition of the 'costs' covered by section 5-108." 204 Ill. 2d 295, 302 (2003). It went on to hold that only "court costs," *i.e.*, "charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees," are recoverable pursuant to that section. (Internal quotation marks omitted.) *Id.*

¶ 132 Plaintiff argues that Illinois Supreme Court Rule 208(d) (eff. Nov. 1, 2011) additionally permits a court to award costs associated with depositions. Recovery of such costs is limited, however, to instances where a deposition is "necessarily used at trial," such as where "the

deponent has died, has disappeared before trial, or is otherwise unavailable to testify." *Vincencio*, 204 Ill. 2d at 308. Although plaintiff states generally that he "incurred costs for depositions necessary for trial," defendants assert, and plaintiff does not refute, that all of the deposition costs plaintiff sought in his petition ($12,433.20 for witness deposition fees plus stenographer appearance, transcription, and video fees) were for depositions where the witness either testified at trial or was available to do so. Plaintiff has furthermore presented no argument for why $24,630.50 in trial stenographer and transcription fees might be recoverable. Indeed, they are not. *Kehoe v. Wildman, Harrold, Allen & Dixon*, 387 Ill. App. 3d 454, 472 (2008) (holding such fees to be litigation expenses, not recoverable "court costs"). When these amounts are deducted, Plaintiff's request is reduced to $1,620, an amount not far from the $1,500 that the circuit court awarded. On this record, we cannot conclude that the circuit court abused its discretion and decline to disturb the court's discretionary award of costs.

¶ 133                                    CONCLUSION

¶ 134    The judgment of the circuit court of Cook County is affirmed.

¶ 135    Affirmed.